**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | |
|---|---|
| MIYAH LACY, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:21-cv-06783 |
| v. | Hon. Andrea R. Wood |
| CITY OF CHICAGO, a municipal corporation, and URT UNITED ROAD TOWING, INC. d/b/a United Road Towing, Inc., a Delaware corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Miyah Lacy ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, brings this action against the City of Chicago ("City") and URT United Road Towing, Inc. ("URT") (collectively, "Defendants"). The following allegations are based upon personal knowledge as to Plaintiff's own facts, upon investigation by Plaintiff's counsel, and upon information and belief where facts are solely in possession of Defendants.

**NATURE OF THE CASE**

1.     Plaintiff brings this lawsuit as a class action on behalf of herself and a class of individuals whose vehicles were impounded by the City and/or its designee(s), and were sold, scrapped, or otherwise disposed of without sufficient notice, and without any compensation to the owner of the vehicle.

2.      Defendants tow and impound tens of thousands of vehicles each year.[1] The vast majority are impounded because either the vehicle is parked in a hazardous location or in violation of the winter street parking ban, or because the owner of the vehicle has multiple unpaid traffic citations.[2]

3.      When the City immobilizes, tows, and/or impounds a vehicle, the owner of the vehicle is assessed various fees—such as a boot removal fee, towing fee, and per-day storage fees. In order to reclaim the vehicle, the owner must pay all outstanding traffic citations, fees associated with impounding the vehicle, and any late penalties and collection fees.

4.      If the vehicle owner is not able to pay all amounts allegedly owed within 18 days after the City issues a notice of towing and impoundment, the City will sell the vehicle, to URT, for only a fraction of the value of the vehicle. The City does not consider the age, condition, or value of the impounded vehicle, but, instead, sells impounded vehicles to URT for the scrap value of the impounded vehicle.[3]

5.      The City fails to provide adequate notice to vehicle owners that the vehicle will be sold, scrapped or otherwise destroyed.

6.      Incredibly, the City also fails to apply the proceeds from the sale of the vehicles to the amounts the vehicle owner allegedly owes in outstanding traffic tickets or for the fees associated with impounding the vehicle. Instead, the City retains the proceeds of the sale of impounded vehicles for itself, and still requires the owners of scrapped vehicles to pay the full amount of the ticket, fees, late-payment penalties, and costs for towing and impoundment, and

---

[1] *See* Elliott Ramos, *Chicago's Towing Program is Broken*, WBEZ (Apr. 1, 2019), available at: http://interactive.wbez.org/brokentowing/ ("Chicago impounded 93,857 vehicles [in 2017]. It sold just under 24,000 of them—or an average of 66 cars a day—each for less than $200.").
[2] *See id.*
[3] *See id.*

potentially adding applicable collection costs and attorneys' fees, if the amount is sent to collections.

7.      After URT "purchases" impounded vehicles from the City, URT either scraps the vehicles or resells them for far more than it paid the City for the "scrap" value of the vehicles.

8.      Accordingly, Plaintiff brings this action, individually, and on behalf of all others similarly situated, for the City's violation of Plaintiff's and Class members' right to due process, the City's violation of the Illinois Vehicle Code, the City's violation of the Municipal Code of Chicago, the City's unlawful taking of Plaintiff's and Class members' property without just compensation, and for unjust enrichment.

## JURISDICTION

9.      The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff brings claims under the United States Constitution and 42 U.S.C. § 1983. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     The Court has personal jurisdiction over the City because it is a municipal corporation located in Illinois and this District, maintains its offices in this District and does substantial business in this District.

11.     The Court has personal jurisdiction over URT because it is registered to conduct business in Illinois, has systematic and continuous contacts with the State, conducts substantial business in this State and within this District, and receives substantial revenues from the acts alleged herein, so as to subject itself to personal jurisdiction in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or occurrences giving rise to the claims alleged herein occurred in this District.

## PARTIES

13.    Plaintiff Miyah Lacy is a resident of Cook County, Illinois, living in Dolton, Illinois.

14.    Defendant City of Chicago is a municipal corporation in the State of Illinois.

15.    Defendant URT United Road Towing, Inc., d/b/a United Road Towing, Inc., is a Delaware corporation with its principal place of business located at 18861 90th Avenue, Mokena, Illinois 60448.

## GENERAL ALLEGATIONS

*The Illinois Vehicle Code*

16.    Section 4-208 of the Illinois Vehicle Code sets forth the minimum requirements that the City must comply with prior to selling, scrapping, or otherwise disposing of an impounded vehicle.

17.    The Illinois Legislature amended Section 4-208 in 2005 to create a process that requires the City to provide the registered owner with multiple, separate notices prior to disposing of an impounded vehicle.

18.    First, when a vehicle is towed and impounded the registered owner of the vehicle must be sent notice of the towing and impoundment of the vehicle on or before the earlier of ten business days after the vehicle was impounded, or two days after the identity of the registered owner is determined. *See id.* (incorporating by reference 625 ILCS 5/4-205).[4]

19.    Second, a second *additional* notice must be sent "by first class mail to the registered owner [of the vehicle]." *See* 625 ILCS 5/4-208(a).

---

[4] The Illinois Vehicle Code requires that notice be provided to "the registered owner, lienholder or other person legally entitled person" (herein, the "registered owner" or "owner"). 625 ILCS 5/4-208.

20.     Third, if the vehicle remains unclaimed for 18 days after the first notice of towing and impoundment was sent to the registered owner, and the registered owner was sent the required "additional notice," the City may then dispose of the impounded vehicle. *Id.*

21.     The Illinois Legislature amended Section 4-208 to create the multi-step notification process for the purpose of ensuring the owners of impounded vehicles are provided with sufficient notice prior to the City disposing of their vehicles: "What [Section 4-208] first does is gives a second notice to these cars that have been towed . . . [and] when [the City] sold these vehicles or demolished them or whatever, the proceeds would be entitled back to the [owners]." Ill. House Tr., 2005 Reg. Sess. No. 60 (comments from Representative Robert Rita); *see also* Ill. House Tr. 2005 Reg. Sess. No. 53 (comments from Representative Black) ("they have to give you due process. They can't just take your property. . . . [Vehicle owners] have to be given notice [and] a chance to redeem" their property.").

### The Municipal Code of Chicago

22.     The Municipal Code of Chicago ("MCC") provides that, when the registered owner of a vehicle has accumulated three of more unpaid traffic citations, or two or more unpaid traffic citations that are more than a year old, the City may "immobilize" the vehicle. *See* MCC 9-100-120(b). Prior to including a vehicle on the City's "immobilization list," the City must send notice to the registered owner of the vehicle that the vehicle will be placed onto the City's immobilization list if the outstanding traffic tickets are not paid. *See id.*

23.     Prior to 2019, when the City, or its agents or designees, immobilized a vehicle, the owner of the vehicle had 24 hours from when the boot is placed on the vehicle to pay all outstanding amounts owed for traffic tickets, and a $100 immobilization fee. If the owner failed to pay those amounts, the City will tow and impound the vehicle. *See* MCC 9-100-120(d), (g).

24.     In 2019, the City amended the Municipal Code to permit vehicle owners to enter into a payment plan with the City to secure release of the immobilized vehicle. *See* MCC 9-100-120(d)(1); City Counsel Journal of Proceedings, 9-18-19, p. 4521, § 3. To be eligible to enter into a payment plan, the vehicle owner must make a down payment on the total debt.[5]

25.     Within ten days of when the vehicle is towed and impounded, the City must send notice by certified mail to the registered owner of the vehicle that the vehicle was impounded. *See* MCC 9-100-120(f); 9-92-070(a). The notice must state that the registered owner has 21 days to either 1) claim the vehicle, 2) request a post-immobilization and post-towing hearing, or 3) request a one-time 15-day extension. MCC 9-100-120(f).

26.     If the vehicle is not claimed or a hearing or extension is not requested within 21 days of the date of notice, the vehicle may be sold or "otherwise disposed of in the manner proscribed by Section 4-208 of the Illinois Vehicle Code." MCC 9-100-120(f). As such, the additional notice requirement of Section 4-208 of the Illinois Vehicle Code is incorporated into MCC 9-100-120(f).

27.     The City acknowledges that it is bound by Section 4-208 of the Illinois Vehicle Code. The City's form Notice of Vehicle Impoundment letter—which Defendants send to the registered owner of the vehicle on only a single occasion, instead of multiple separate notices required by the Illinois Vehicle Code and Municipal Code of Chicago—provides that if an impounded vehicle remains unclaimed, it "may result in the sale or other disposition of the vehicle and its contents, ***as provided in Section 4-208 of the Illinois Vehicle Code***." (emphasis added).

---

[5] *See Payment Plan Options for Parking, Red Light Camera and Automated Speed Camera Violations*, City of Chicago, https://www.chicago.gov/city/en/depts/fin/supp_info/revenue/parking_and_red-lightticketpaymentplans.html (last visited Jan. 17, 2022).

28.     To the extent that MCC 9-100-120 does not require Defendants to provide the registered owner of the vehicle with an "additional" notice that the vehicle may be disposed of, MCC 9-100-120 conflicts with Section 4-208 of the Illinois Vehicle Code.

29.     To secure release of an impounded vehicle, the owner of the vehicle must pay "the full amount of applicable towing and storage fees . . . plus all amounts due for outstanding [traffic citations], including all related collections costs and attorney's fees . . . ." MCC 9-92-080(a).

30.     The City assesses a $150 towing fee ($250 for vehicles over 8,000 pounds) for towing the vehicle. *Id.* at 9-92-080(b).

31.     The City also charges a "storage fee" for keeping vehicles in the impound lots. For a passenger vehicle, the owner is assessed a "storage fee" of $20 for the first five days and $35 for each day thereafter (or $60 and $100 per day, respectively, for vehicles weighing over 8,000 pounds). *Id.*

32.     If the vehicle owner seeks to secure release of an impounded vehicle by entering into a payment plan with the City, the owner must first pay all applicable immobilization, towing, and storage fees, plus a down payment on the outstanding traffic tickets. *See* MCC 9-100-160.[6]

33.     Like the Illinois Vehicle Code, the City's municipal code provides that if the registered owner of an impounded vehicle does not claim the vehicle within 18 days from the mailing of the notice of impoundment, and "if, during that 18-day period, the [City] has sent an additional notice by first class mail to the registered owner," the City may dispose of the vehicle. MCC 9-92-100(a). The City may dispose of unclaimed vehicles by selling the vehicle to "a person licensed as an automotive parts recycler, rebuilder or scrap processor." MCC 9-92-100(b).

---

[6] *See also Payment Plan Options*, *supra* note 5.

34.     If the value of the unclaimed vehicle "substantially exceeds its scrap value," the City may sell the vehicle "at a public auction to a person licensed as an automotive parts recycler, rebuilder or scrap processor." *Id.* at 9-92-100(c). At least 10 days prior to the auction of the unclaimed vehicle, the City must send notice to the registered owner of the vehicle of the time and place of the auction, and explain the steps the owner may take to reclaim the vehicle. *Id.*

35.     Alternatively, the City may dispose of an impounded vehicle by adding the vehicle to the City's fleet of vehicles. MCC 9-92-100(d). Prior to adding the vehicle to the City's fleet, the City must send notice to the registered owner of the vehicle. *Id.*

36.     Many Chicagoans are driven into bankruptcy by the rapid escalation of fines and fees associated with parking tickets, towing fees and impoundment costs.[7]

37.     In the past, a registered owner in such dire financial straits could sometimes get his or her vehicle back by filing for bankruptcy. Debt collection is automatically stayed upon such filing, and debtors were often able to get their vehicles out of impoundment before the City disposed of them.

38.     However, in 2017, the City amended the MCC to provide that "Any vehicle immobilized by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle." MCC 9-100-120(j). The City added the provision to prevent vehicle owners from obtaining release of their impounded vehicles if they filed for Chapter 13 bankruptcy, making clear that the City's purpose in towing, impounding, and scrapping vehicles in connection with parking violations is to collect debt by preventing bankrupt citizens from recovering their vehicles.

---

[7] *See* Melissa Sanchez and Sandhya Kambhampati, *How Chicago Ticket Debt Sends Black Motorists into Bankruptcy*, ProPublica Illinois (Feb. 27, 2018), available at: https://features.propublica.org/driven-into-debt/chicago-ticket-debt-bankruptcy/.

***The City's Practice of Selling Unclaimed Vehicles for Scrap to URT***

39.    In 2017, the City impounded nearly 100,000 vehicles and sold approximately 24,000 of those vehicles for scrap.[8]

40.    The City contracts with URT for the management of towing operations in the City.[9] URT acts as the City's designee relative to towing and impounding vehicles.

41.    Eighteen days after the City impounds a vehicle, if the owner of the vehicle has not secured release of the vehicle by paying all outstanding traffic citations and applicable immobilization, towing, and storage fees; requested an extension; or, post-2019, entered into a payment plan, the City will dispose of the impounded vehicle.

42.    The City has a policy and practice of disregarding requests for an extension of the deadline before the City disposes of impounded vehicles. It is the City's stated policy and practice that the Department of Streets and Sanitation has discretion whether to grant a request for an extension, and to determine the length of the extension.

43.    The City's policy and practice is contrary to the express provisions of MCC 9-100-120(f), which requires the City to honor requests for a 15-day extension. *See* MCC 9-100-120(f) ("The department of streets and sanitation ***shall*** honor such a request and ***shall not*** sell or otherwise dispose of a vehicle during the 15-day extension period.") (emphasis added).

44.    Frequently, the City disposes of the unclaimed vehicles by selling them to URT for the scrap value of the vehicle. For example, in 2017, approximately 75% of the 32,155 unclaimed vehicles impounded by the City were sold to URT.[10]

---

[8] *See Chicago's Towing Program is Broken*, *supra* note 1.
[9] *See id.*
[10] *See id.*

45.     The City sells the unclaimed vehicles to URT for a fraction of the value of the vehicle, usually for $200 or less, regardless of the age, model, condition or value of the vehicle.[11]

46.     Defendants often fail to determine if the value of unclaimed vehicles substantially exceeds the scrap value. Instead, the City sells unclaimed vehicles to URT for the scrap value of the vehicle in order for URT to purchase the vehicles for a fraction of the market value.[12]

47.     The City has a policy or practice of failing to send a separate "additional" notice to the registered owners of impounded vehicles. The purpose of the policy or practice is to allow the City to sell the unclaimed vehicles to URT, so that Defendants can profit from the sale of the unclaimed vehicles at Plaintiff's and Class members' expense.

48.     Incredibly, when the City sells a vehicle to URT for scrap, the City does not use any of the proceeds from the sale of the vehicle to reduce the amounts owed by the vehicle owner.[13] Instead, the City retains for itself the entire proceeds of the sale of unclaimed vehicles to URT, and demands that the owner of the vehicle pay the entire amount outstanding for traffic citations, immobilization, towing, and storage fees, and any applicable collections costs and attorneys' fees, without providing the debtor credit for the sale of the unclaimed vehicle. *See* MCC 9-92-100(e) ("Disposal of a vehicle pursuant to this section shall not relieve the violator of liability for all costs, fines and penalties incurred in conjunction with such vehicle . . .").

49.     Even after the City disposes of an impounded vehicle, if the registered owner of that vehicle has three or more outstanding traffic citations (or two or more that are more than one

---

[11] *See id.* (noting that the City's sales to URT in 2017 included "a 2016 Ford Mustang for $176.09, a 2014 Audi A3 for $147.15, and a 2011 Mercedes M-Class for $143.33"); John Pearley Huffman, *An Inside Look at Chicago's Seedy Car-Impound Netherworld*, Car and Driver (Aug. 25, 2019), available at: https://www.caranddriver.com/features/a28776512/impounded-cars-chicago.

[12] *See Chicago's Towing Program is Broken*, *supra* note 1 (noting that many of the vehicles sold by the City to URT for scrap value are worth far more than the scrap value of the vehicle).

[13] *See id.* ("None of the proceeds go toward paying off the debt the vehicle's owner accrued during ticketing, booting and towing.").

year old), the City will keep the registered owner on the City's immobilization list. As such, until the registered owner of a vehicle that the City disposed of pays the entire amount of allegedly outstanding traffic citations, the registered owner continues to face the threat that the City will immobilize, impound and dispose of any additional vehicles that the individual owns.

50.     The City knows that the vehicles impounded for unpaid traffic citations have not been abandoned by the owner, but refuses to provide the vehicle owners with just compensation for the value of their vehicle, or even reduce the amount of liability for the unpaid citations, or the towing or storage fees associated with the impoundment of the vehicle. Indeed, if the City were to consider the unclaimed vehicles as "abandoned," it would be required to reduce the amount the owner of vehicle owes to the City related to towing and storage. *See* MCC 9-92-100(e) ("with respect to disposal of an abandoned vehicle, the amount of liability for towing and storage costs shall be reduced by any amounts realized in the disposal of the vehicle in accordance with Article II of Chapter 4 of the Illinois Vehicle Code.").

51.     The City profits handsomely from the disposal of unclaimed vehicles. In 2017, the City received approximately $4.6 million from the sale of unclaimed vehicles to URT. Additionally, the City benefits from disposing of unclaimed vehicles by adding the vehicles to the City's fleet by retaining and using the vehicle.

52.     The City's policy to violate both Section 4-208 and MCC 9-92-100, and the policy of selling unclaimed vehicles to URT without reducing the amount that the vehicle owner purportedly owes to the city or providing compensation for the actual value of the vehicle is designed to generate revenue for the City.

53.     URT also greatly benefits from the City's sale of unclaimed vehicles. Through the scheme of purchasing the unclaimed vehicles from the City for scrap value, URT obtains vehicles

11

for a fraction of the actual value of the vehicle. While vehicles sold to URT as scrap receive a salvage or junking title, URT can resell the vehicles for significantly more than URT paid the City for the vehicles.

54.     URT acts under color of law with respect to the immobilization, towing, impoundment and disposal of vehicles. URT acts on behalf of the City, and at the City's behest, and in furtherance of the policy and practice of both failing to send the additional notice required by Section 4-208 of the Illinois Vehicle Code and Chapter 9-92 of the MCC, and disposing of impounded vehicles without providing just compensation to the owner of the vehicle.

## **FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF**

55.     Plaintiff Lacy was the registered owner of a 2003 Honda Odyssey. Plaintiff's vehicle was registered to her address in Dolton, Illinois.

56.     Prior to December 2019, Plaintiff received through the mail several traffic citations from the City. As of December 6, 2019, Plaintiff Lacy had three traffic citations from the City that were unpaid.

57.     On or about December 6, 2019, Plaintiff Lacy parked her vehicle on the street near 2553 S. California Avenue, Chicago, Illinois. While Plaintiff Lacy was working, the City immobilized Plaintiff Lacy's vehicle.

58.     Plaintiff Lacy contacted the City and requested the City remove the immobilization device from her vehicle. The City's representative advised Plaintiff Lacy that she was required to pay the entire amount of outstanding traffic citations and applicable fees—approximately $1,200—to have the device removed. The City's representative did not advise Plaintiff Lacy that the failure to pay the amount owed would result in the City disposing of her vehicle. Plaintiff Lacy was unable to pay the amounts the City demanded.

59.    Several days later, on or about December 8, 2019, the City, through URT, towed and impounded Plaintiff Lacy's vehicle.

60.    The City claims that, on or about December 12, 2019, it mailed to Plaintiff Lacy a NOTICE OF VEHICLE IMPOUNDMENT.

61.    Plaintiff Lacy did not receive any notice from the City concerning the impoundment of her vehicle.

62.    Neither the City nor URT mailed Plaintiff Lacy any additional notice, as required by 625 ILCS 5/4-208(a) and MCC 9-92-100(a). In response to a Freedom of Information Request that Plaintiff Lacy made to the City for all notices sent to Plaintiff Lacy concerning her vehicle, the City produced only a single document titled Notice of Vehicle Impounded, dated December 12, 2019.

63.    Prior to December 31, 2019, Plaintiff Lacy went in person to the Chicago Department of Revenue to discuss the impoundment of her vehicle. The City's employee, agent and/or representative advised Plaintiff Lacy that in order to secure release of her vehicle she had to pay the entire amount owed to the City. The City's employee, agent, and/or representative did not advise Plaintiff Lacy that the failure to pay the entire amount of the claimed debt within 21 days of the impoundment of her vehicle would result in her vehicle being sold or otherwise disposed of.

64.    On or about December 31, 2019, Plaintiff Lacy again contacted the City, through its agent or representative at the 744-PARK call center, and requested an extension of the deadline to secure the release of her vehicle in order to gather the money necessary to pay the amount that she purportedly owed the City to secure release of her vehicle. Plaintiff requested the extension of the deadline under the belief that the failure to pay the entire amount owed would result in the debt

being sent to collections. Plaintiff was not advised that the failure to pay the entire amount allegedly owed would result in the City selling or otherwise disposing of her vehicle.

65.     In response to Plaintiff's request for an extension, the City's internal documents indicate that the City has a policy or practice to disregard requests for a 15-day extension: "It is at the discretion of the Department of Streets and Sanitation whether or not to honor the request [for an extension] and, if so, for how long the extension is to be granted."

66.     Plaintiff's request for a 15-day extension was not honored. Prior to the expiration of the mandatory 15-day extension, Plaintiff Lacy discovered through the City's website that her vehicle had been sold or otherwise disposed of.

67.     The City disposed of Plaintiff Lacy's vehicle by selling it to URT for the scrap value of the vehicle, and not the actual or market value of the vehicle.

68.     The value of Plaintiff Lacy's vehicle substantially exceeded the scrap value of the vehicle.

69.     The City disposed Plaintiff Lacy's vehicle without providing her any compensation for the taking of her vehicle. Even after unlawfully disposing of her vehicle, the City continued to demand that Plaintiff Lacy pay the outstanding traffic citations, as well as the fees for the immobilization, towing, and impound of her vehicle—totaling approximately $3,000.

70.     Eventually, the City referred the claimed debt to collections.

71.     The City continues to allege that Plaintiff Lacy has unpaid tickets and unpaid ticket debt related to three or more violations.

## CLASS ALLEGATIONS

72.      Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All persons who had a vehicle impounded and disposed of by the City pursuant to MCC 9-100-120 or MCC 9-92-010, *et seq.*

73.     Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff also seeks to represent subclasses, defined as follows:

### The Notice Subclass

> All persons who had a vehicle impounded and disposed of by the City pursuant to MCC 9-100-120 or MCC 9-92-010, *et seq.*, and for whom Defendants have no record of sending at least two separate notices prior to the disposal of the vehicle.

### The Extension Subclass

> All persons who had a vehicle impounded by the City and made a request to the City for an extension of time to resolve any associated debt claimed by the City, but did not receive an extension of at least 15 days.

74.     The Class and Subclasses shall be collectively referred to herein as the "Class." Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; (c) Plaintiff's counsel and Defendants' counsel; and (d) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family. Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

75.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class is unknown at this time, such information being in the sole possession of Defendants and/or third parties and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Defendants' and other third party's records.

15

76. Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

      a. Whether the City has a policy or practice of not sending the registered owners of vehicles a second separate notice that the vehicle was impounded and may be disposed of;

      b. Whether the City violated Section 4-208 of the Illinois Vehicle Code by failing to send a second separate notice to Plaintiff and Class members prior to disposing of their property;

      c. Whether the City violated MCC 9-92-100 by failing to send a second separate notice to Plaintiff and Class members prior to disposing of their property;

      d. Whether the City has a policy or practice that it has discretion regarding whether to honor requests for an extension of the time period before the City sells or otherwise disposes of impounded vehicles;

      e. Whether the City's policy or practice that it has discretion regarding whether to honor requests for an extension of the time period before the City sells or otherwise disposes of impounded vehicles violates MCC 9-100-120(f);

      f. Whether the City unlawfully disposed of impounded vehicles by failing to send a second notice that the vehicle was impounded prior to disposal of the vehicle;

      g. Whether the City unlawfully disposed of impounded vehicles by failing to honor requests for a 15-day extension prior to disposing of the vehicle;

      h. Whether the City has a policy or practice of taking impounded vehicles for public use;

      i. Whether the City has a policy or practice of taking the proceeds from the disposal of impounded vehicles for public use; and

      j. Whether Defendants were unjustly enriched by disposing of Plaintiff's and Class members' property.

77. **<u>Typicality</u>**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out the uniform conduct of failing to provide the

required notice to registered owners of impounded vehicles that the vehicle will be disposed of, and the disposal of impounded vehicles without providing the owners with just and adequate compensation.

78.     **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

79.     **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for individual Class members to effectively redress the wrongs done to them. Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

80.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violation of Procedural Due Process**
**(42 U.S.C. § 1983)**
**(On behalf of the Class and Notice Subclass against the City of Chicago)**

81.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

82.     The Fifth Amendment of the United States Constitution provides that no person shall be deprived of property without due process. U.S. Const. Amend. V.

83.     "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998).

84.     At all relevant times there was in full force and effect United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

85.     Actions against municipalities seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

86.     Plaintiff and members of the Class are "persons," as that term is defined by 42 U.S.C. § 1983.

87.     At all relevant times, the City and its employees, agents, or designees acted under the color of law.

88.     The City has policy or practice of disregarding the notice requirements in both the Illinois Vehicle Code and Municipal Code of Chicago regarding providing notice to the registered owner of impounded vehicles that the vehicle will be disposed of.

89.     The failure to provide notice to Plaintiff and Class members prior to the disposal of their vehicles is constitutionally inadequate.

90.     By failing to adequately notify Plaintiff and Class members that their property may be disposed of, the City deprived Plaintiff and Class members of a meaningful opportunity to prevent the disposal of their property.

91.     The disposal of Plaintiff's and Class members' impounded vehicles without notice violates Plaintiff's and Class members' right to procedural due process.

92.     As a direct and proximate result of the City's conduct, Plaintiff and Class members suffered damages in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
**Violation of the Illinois Vehicle Code**
**(On behalf of the Class and Notice Subclass against the City of Chicago)**

93.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

94.     Plaintiff and Class members are entitled to enforce 625 ILCS 5/4-208. Section 4-208 of the Illinois Vehicle Code was intended to protect vehicle owners, lienholders and other legally entitled persons who had a vehicle impounded from being deprived of their vehicles without receiving multiple separate notices required by Section 4-208.

95.     Plaintiff's and Class members' injuries are ones that Section 4-208 was designed to prevent: requiring the City to send owners of impounded vehicles multiple separate notices prior to the disposal of their vehicles.

96.    Implying a private right of action is consistent with the purpose of Section 4-208 as it permits persons whose vehicles were impounded by the City to ensure that the City complies with the requirement to send multiple separate notices to the registered owner of the vehicle prior to the City disposing of the vehicle and, thereby, depriving the owner of the vehicle. *See e.g.*, Ill. House Tr., 2005 Reg. Sess. No. 60 (comments from Representative Rita) ("what [Section 4-208] first does is gives a second notice to these cars that have been towed and . . . when they sold these vehicles or demolished them or whatever the proceeds would be entitled back to the [owners of the vehicles]"); Ill. House Tr. 2005 Reg. Sess. No. 53 (comments from Representative Black) ("they have to give you due process. They can't just take your property. . . . [Vehicle owners] have to be given notice [and] a chance to redeem" their property.").

97.    Implying a private right of action is necessary for Plaintiff and Class members to ensure that the City complies with the multiple separate notice requirement of Section 4-208.

98.    The City violated Section 4-208 of the Illinois Vehicle Code by failing to send Plaintiff and Class members multiple separate notices that their vehicles were impounded by the City and the vehicles may be disposed of if the owner does not claim the vehicle or request an extension within 18 days.

99.    As a direct and proximate result of the City's violation of Section 4-208, Plaintiff and Class members suffered damages, including the violation of the statutory rights provided by Section 4-208, the loss of their vehicles, and the assessment of additional fees associated with impounding the vehicles.

**THIRD CAUSE OF ACTION**
**Violation of the Municipal Code of Chicago—Failure to Send Additional Notices**
**(On behalf of the Class and Notice Subclass against the City of Chicago)**

100.    Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

20

101.    Plaintiff and Class members are entitled to enforce MCC 9-92-100. Section 9-92-100 of the Municipal Code of Chicago was intended to protect vehicle owners, lienholders and other legally entitled persons who had a vehicle impounded from being deprived of their vehicles without receiving multiple separate notices required by MCC 9-92-100.

102.    Plaintiff's and Class members' injuries are ones that MCC 9-92-100 was designed to prevent: requiring the City to send owners of impounded vehicles multiple separate notices prior to the disposal of their vehicles.

103.    Implying a private right of action is consistent with the purpose of MCC 9-92-100 as it permits persons whose vehicles were impounded by the City to ensure that the City complies with the requirement to send multiple separate notices to the registered owner of the vehicle prior to the City disposing of the vehicle and, thereby, depriving the owner of the vehicle.

104.    Implying a private right of action is necessary for Plaintiff and Class members to ensure that the City complies with the multiple separate notice requirement of MCC 9-92-100.

105.    The City violated Section 9-92-100 of the Municipal Code of Chicago by failing to send Plaintiff and Class members multiple separate notices that their vehicles were impounded by the City and the vehicles may be disposed of if the owner does not claim the vehicle or request an extension within 18 days.

106.    As a direct and proximate result of the City's violation of MCC 9-92-100, Plaintiff and Class members suffered damages, including the violation of the statutory rights provided by MCC 9-92-100, the loss of their vehicles, and the assessment of additional fees associated with impounding the vehicles.

**FOURTH CAUSE OF ACTION**
**Violation of the Municipal Code of Chicago—Failure to Follow Mandatory 15-Day Extension Requirement of MCC 9-100-120(f)**
**(On behalf of the Class and Extension Subclass against the City)**

107.    Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

108.    Plaintiff and Class members are entitled to enforce MCC 9-100-120(f). Section 9-100-120(f) of the Municipal Code of Chicago was intended to protect vehicle owners who had a vehicle impounded and requested a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle.

109.    Plaintiff's and Class members' injuries are ones that MCC 9-100-120(f) was designed to prevent: requiring the City to honor requests for a 15-day extension of the time period before it sells or otherwise disposes of an impounded vehicle, providing the owner of the vehicle additional time to request a hearing or secure the release of the vehicle before the City permanently deprives the owner of their property.

110.    Implying a private right of action is consistent with the purpose of MCC 9-100-120(f) as it permits persons whose vehicles were impounded by the City to ensure that the City complies with the requirement to honor requests for a 15-day extension prior to the City disposing of the vehicle and, thereby, depriving the owner of the vehicle.

111.    Implying a private right of action is necessary for Plaintiff and Class members to ensure that the City complies with the mandatory requirement of MCC 9-100-120(f) to honor requests for a 15-day extension.

112.    The City violated Section 9-100-120(f) of the Municipal Code of Chicago by creating a policy and practice that the City, through the Department of Streets and Sanitation, has discretion whether to honor a request for an extension of the time period before the City sells or

otherwise disposes of an impounded vehicle, and discretion concerning the length of the extension in violation of MCC 9-100-120(f), which provides that the City **shall** honor requests for an extension, and **shall not** sell or otherwise dispose of the vehicle during the 15-day extension period.

113.    As a direct and proximate result of the City's violation of MCC 9-100-120(f), Plaintiff and Class members suffered damages, including the violation of the statutory rights provided by MCC 9-100-120(f), and the City permanently depriving vehicle owners of their property prior to the expiration of the time for owners to request a hearing or secure release of the impounded vehicle.

**FIFTH CAUSE OF ACTION**
**Mandamus to Comply with MCC 9-100-120(f)**
**(On behalf of the Class and Extension Subclass against the City)**

114.    Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

115.    MCC 9-100-120(f) sets forth a clear right for owners of impounded vehicles to receive a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle. The right to a 15-day extension in MCC 9-100-120(f) is public right for all individuals whose vehicle has been impounded by the City.

116.    MCC 9-100-120(f) sets forth a clear duty for the City to honor requests from the registered owner of vehicles for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle. *See* MCC 9-100-120(f) ("The department of streets and sanitation ***shall*** honor such a request and ***shall not*** sell or otherwise dispose of a vehicle during the 15-day extension period.") (emphasis added).

117.    The City's policy and practice that the Department of Streets and Sanitation has discretion to honor requests for an extension, and has discretion to determine the length of the extension fails to comply with the City's mandatory duties in MCC 9-100-120(f).

118.    Plaintiff and the Class lack an adequate remedy at law.

119.    Plaintiff, on behalf of the Class, seeks a writ of mandamus that directs the City to comply with MCC 9-100-120(f), to honor all requests for a 15-day extension of the time period before the City sells or otherwise disposes of an impounded vehicle, and to not sell or otherwise dispose of impounded vehicles during the 15-day extension period.

### SIXTH CAUSE OF ACTION
**Declaratory Judgment**
**(On behalf of the Class and Notice Subclass against the City)**

120.    Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

121.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the United States Constitution and state statutes described in this complaint.

122.    Plaintiff seeks a declaration of the rights of the parties under the Federal Declaratory Judgement Act, 28 U.S.C. § 2201.

123.    An actual and justiciable controversy exists between the parties in light of the City's failure to provide Plaintiff and Class members with the multiple separate notices required by the Illinois Vehicle Code and/or the Municipal Code of Chicago prior to disposing of their vehicles, and failure to compensate Plaintiff and Class members for the loss of their property.

124.    Plaintiff and Class members lack an adequate remedy at law.

125. Plaintiff, on behalf of the Class, seeks a declaration that the City's policy or practice of disposing of impounded vehicles without sending the registered owner of impounded vehicles multiple separate notices that the City may dispose of the impounded vehicle if the registered owner or legally entitled person does not claim the vehicle violates Section 4-208 of the Illinois Vehicle Code and/or MCC 9-92-100.

**SEVENTH CAUSE OF ACTION**
**Violation of the Takings Clause—Failure to Send Separate Additional Notice**
**(42 U.S.C. § 1983)**
**(On behalf of the Class and Notice Subclass against the City of Chicago)**

126. Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

127. The Fifth Amendment of the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. Amend. V.

128. At all relevant times there was in full force and effect United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

129. Actions against municipalities seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

130. Plaintiff and members of the Class and Subclass are "persons," as that term is defined by 42 U.S.C. § 1983.

131. At all relevant times, the City and its employees, agents, and/or designees acted under the color of law.

25

132.    The City has a policy or practice of disposing of impounded vehicles without providing the registered owner of the vehicle multiple separate notices, as required by both the Illinois Vehicle Code and the Municipal Code of Chicago.

133.    The City disposes of impounded vehicles by either 1) selling the impounded vehicles for the scrap value of the vehicle, regardless of the actual or fair value of the vehicle; 2) auctioning the impounded vehicle at a public auction; or 3) adding the impounded vehicle to the City's fleet. Regardless of the method of disposing of the unclaimed vehicle, the City does not provide any compensation to the owner of the vehicle for disposal of the vehicle, and does not provide credit from the sale of the vehicle towards the owner's unpaid traffic citations or fees associated with impounding the vehicle. *See* MCC 9-92-100(e).

134.    The City's policy and practice of taking Plaintiff's and Class members' vehicles without complying with the multiple separate notice requirements of both Section 4-208 of the Illinois Vehicle Code, and Chapter 9-92 of the MCC constitutes an unlawful taking of Plaintiff's and Class members' vehicles.

135.    The City uses the proceeds from the disposal of the impounded vehicles for public use. The City retains the proceeds from the sale—whether to URT or at a public auction—for the City's use. Further, when the City adds impounded vehicle to the City's fleet, the vehicle is taken for public use as the vehicle is used by the City and City employees.

136.    Pursuant to the aforementioned policies or practices, the City unlawfully disposed of Plaintiff's and Class members' vehicles by failing to comply with the multiple separate notice requirements of Section 4-208 of the Illinois Vehicle Code, and Chapter 9-92 of the MCC.

137.    The City's conduct violates Plaintiff's and Class members' rights under the Fifth Amendment to the United States Constitution.

138.     As a direct and proximate result of the City's conduct, Plaintiff and Class members suffered damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
**Violation of the Takings Clause—Failure to Honor Request for Extension
(42 U.S.C. § 1983)
(On behalf of the Class and Extension Subclass against the City of Chicago)**

139.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

140.     The Fifth Amendment of the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. Amend. V.

141.     At all relevant times there was in full force and effect United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

142.     Actions against municipalities seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

143.     Plaintiff and members of the Class and Subclass are "persons," as that term is defined by 42 U.S.C. § 1983.

144.     At all relevant times, the City and its employees, agents, and/or designees acted under the color of law.

145.     MCC 9-100-120(f) sets forth a clear duty for the City to honor requests from the registered owner of vehicles for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle. *See* MCC 9-100-120(f) ("The department of streets and

27

sanitation *shall* honor such a request and *shall not* sell or otherwise dispose of a vehicle during the 15-day extension period.") (emphasis added).

146.    The City has a policy or practice that the Department of Streets and Sanitation has discretion to honor requests for an extension, and has discretion to determine the length of the extension. The City's policy and practice fails to comply with the City's mandatory duties in MCC 9-100-120(f).

147.    The City disposes of impounded vehicles by either 1) selling the impounded vehicles for the scrap value of the vehicle, regardless of the actual or just value of the vehicle; 2) auctioning the impounded vehicle at a public auction; or 3) adding the impounded vehicle to the City's fleet. Regardless of the method of disposing of the unclaimed vehicle, the City does not provide any compensation to the owner of the vehicle for disposal of the vehicle, and does not provide credit from the sale of the vehicle towards the owner's unpaid traffic citations or fees associated with impounding the vehicle. *See* MCC 9-92-100(e).

148.    The City's policy and practice of disposing of Plaintiff's and Class members' vehicles without honoring a request for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle constitutes an unlawful taking of Plaintiff's and Class members' vehicles.

149.    The City uses the proceeds from the disposal of the impounded vehicles for public use. The City retains the proceeds from the sale—whether to URT or at a public auction—for the City's use. Further, when the City adds impounded vehicle to the City's fleet, the vehicle is taken for public use as the vehicle is used by the City and City employees.

28

150.     Pursuant to the aforementioned policies or practices, the City unlawfully disposed of Plaintiff's and Class members' vehicles by failing to honor requests for a 15-day extension prior to the City disposing of the impounded vehicle.

151.     The City's conduct violates Plaintiff's and Class members' rights under the Fifth Amendment to the United States Constitution.

152.     As a direct and proximate result of the City's conduct, Plaintiff and Class members suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On behalf of the Class and Extension Subclass against the City)**

153.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

154.     Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the United States Constitution and state statutes described in this complaint.

155.     Plaintiff seeks a declaration of the rights of the parties under the Federal Declaratory Judgement Act, 28 U.S.C. § 2201.

156.     An actual and justiciable controversy exists between the parties in light of the City's failure to honor requests for a 15-day extension prior to disposing of their vehicles, which deprived Plaintiff and Class members of their property.

157.     Plaintiff and Class members lack an adequate remedy at law.

158.     Plaintiff, on behalf of the Class, seeks a declaration that the City's policy or practice of failing to honor requests for a 15-day extension prior to disposing of impounded vehicles violates MCC 9-100-120(f).

**TENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of the Class and Subclasses against Defendants)**

159.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

160.     Through the process of impounding and disposing of impounded vehicles, Defendants retained benefits at Plaintiff's and Class members' expense.

161.     The City received a benefit by disposing of Plaintiff's and Class members' property through: 1) the proceeds from the sale of impounded vehicles to URT for scrap; 2) the proceeds from the public auction of Plaintiff's and Class members' impounded vehicles and the property therein; and 3) adding impounded vehicles to the City's fleet of vehicles.

162.     The City retained the benefits of disposing of Plaintiff's and Class members' vehicles by keeping the proceeds from the sale or adding the vehicles to the City's fleet and failing to compensate Plaintiff and Class members, including demanding that Plaintiff and Class members pay the entire amount of outstanding traffic tickets, and fees and costs associated with impounding the vehicles.

163.     URT received a benefit from purchasing Plaintiff's and Class members' vehicles for the scrap value of the vehicles—far below the actual or market value—and either retaining the property for its own use or reselling the property.

164.     Plaintiff and Class members were harmed by Defendants' conduct because they were deprived of their property without any compensation, including that the City continued to

demand that Plaintiff and Class members pay the full amount of outstanding traffic citations and costs and fees associated with impounding their vehicles after Defendants disposed of the impounded vehicles.

165. Plaintiff and Class members were further harmed by Defendants' conduct because their vehicles were unlawfully disposed of, in that the City failed to comply with the requirement to send multiple separate notices to the registered owners of the impounded vehicles prior to disposing of the vehicle.

166. Plaintiff and Class members were also harmed by Defendants' conduct because their vehicles were unlawfully disposed of, in that the City failed to fully honor requests for a 15-day extension prior to disposing of the vehicle.

167. Defendants' retention of the benefits that they obtained from the disposal of Plaintiff's and Class members' property violates the fundamental principles of justice, equity, and good conscience, and requires that Plaintiff and Class members be compensated.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that this Court:

A.  Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more of the Classes defined above;

B.  Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.  Award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class members are entitled;

D.  Award pre-judgment and post-judgment interest on such monetary relief;

E.  Enter a writ of mandamus directing the City to honor all requests made under MCC 9-100-120(f) for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle.

31

F.      Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires the City to comply with the notice requirements of Section 4-208 of the Illinois Vehicle Code prior to disposing of impounded;

G.      Award reasonable attorneys' fees and costs; and

H.      Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of herself and the putative Class, demands a trial by jury on all issues so triable.

Dated: January 18, 2023                    Respectfully submitted,

                                           */s/ Nyran Rose Rasche*
                                           Nyran Rose Rasche
                                           nrasche@caffertyclobes.com
                                           Nickolas J. Hagman
                                           nhagman@caffertyclobes.com
                                           **CAFFERTY CLOBES MERIWETHER
                                           & SPRENGEL LLP**
                                           135 S. LaSalle St., Suite 3210
                                           Chicago, Illinois 60603
                                           Telephone: 312-782-4880
                                           Facsimile: 318-782-4485

                                           Bryan L. Clobes
                                           bclobes@caffertyclobes.com
                                           **CAFFERTY CLOBES MERIWETHER
                                           & SPRENGEL LLP**
                                           205 N. Monroe St.
                                           Media, PA 19063
                                           Telephone: (215) 864-2800
                                           Fax: (215) 964-2808

                                           ***Attorneys for the Plaintiff and the Putative Class***

## <u>CERTIFICATE OF SERVICE</u>

      I, Nyran Rose Rasche, an attorney, hereby certify that on January 18, 2023, service of the foregoing ***First Amended Class Action Complaint*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


                          *s/   Nyran Rose Rasche*
                          Nyran Rose Rasche