**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MIYAH LACY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-06783 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

After Plaintiff Miyah Lacy failed to pay three traffic citations she owed to Defendant City of Chicago ("City"), her vehicle was first immobilized, then impounded, and ultimately sold to Defendant URT United Road Towing, Inc. ("URT") for well below market value. At the same time, Lacy received no payment or credit against her debts as a result of her vehicle's sale. Lacy contends that certain of the City's practices around disposing of impounded vehicles violate the Fifth Amendment's Takings Clause, as well as state and local law. For that reason, Lacy brought this putative class action against Defendants seeking damages, injunctive relief, and declaratory relief. The City and URT each have filed a motion to dismiss Lacy's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. Nos. 42, 44.) For the reasons that follow, the City's motion is granted in part and denied in part, and URT's motion is granted.

## BACKGROUND

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the First Amended Class Action Complaint ("FAC") as true and views those facts in the light most

favorable to Lacy as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

Each year, the City tows and impounds tens of thousands of vehicles because of unpaid traffic ticket debt. (FAC ¶ 2, Dkt. No. 34.) Pursuant to the Municipal Code of Chicago ("MCC"), when vehicle owners have two tickets that are unpaid for more than a year or three tickets that are unpaid at any time, the owners are subject to a series of escalating enforcement actions. (*Id.* ¶¶ 22–26.) The City begins by immobilizing, or "booting," the car. (*Id.* ¶¶ 22–23.) Before 2019, the vehicle's owner had 24 hours after their vehicle's immobilization to pay their outstanding ticket debt and a $100 immobilization fee, or else their vehicle would be towed and impounded. (*Id.* ¶ 23.) In 2019, the City amended the MCC to permit vehicle owners to obtain release of their immobilized vehicle by making a downpayment on their debt and entering into a payment plan with respect to the remaining sum. (*Id.* ¶ 24.) Next, the City tows and impounds the car, adding a $150 tow fee and daily fees of $20 to $35 for storage. (*Id.* ¶¶ 30–31.) If the owner does not timely pay the balance (or enter into a payment plan), the City takes possession of the vehicle and can add it to its fleet, auction it off, or sell it for scrap. (*Id.* ¶¶ 32–35.) Typically, the City sells the car for scrap for around $200. (*Id.* ¶¶ 44–45.) The owner receives no compensation or credit against their debt for the disposition of their vehicle. (*Id.* ¶ 48.)

The City contracts with URT to provide towing and automobile pound management services. (*Id.* ¶¶ 40, 54.) When a vehicle's owner cannot afford to pay for its release, or the vehicle otherwise goes unclaimed, the City often sells it to URT at scrap value. (*Id.* ¶ 44.) Those sales are profitable to the City; in 2017, the City received about $4.6 million from selling unclaimed vehicles to URT. (*Id.* ¶ 51.) Likewise, URT benefits from the sales because, even

though the vehicles are sold to URT as scrap, URT is nonetheless able to resell the vehicles for significantly more than what it paid to the City. (*Id.* ¶ 53.)

Prior to December 2019, Lacy had received three traffic citations from the City that she had not yet paid. (*Id.* ¶ 56.) Thus, on December 6, 2019, Lacy's 2003 Honda Odyssey was immobilized while parked on a street nearby her workplace. (*Id.* ¶ 57.) Because Lacy was unable to pay the approximately $1,200 in outstanding ticket debt that the City demanded in exchange for release of the immobilization device, her vehicle was towed and impounded two days later. (*Id.* ¶¶ 58–59.) The City mailed a notice of vehicle impoundment to Lacy on December 12, 2019. (*Id.* ¶¶ 60, 62.)

Upon impounding an immobilized vehicle, the City must send notice of the vehicle's impoundment to its registered owner. (*Id.* ¶ 25.) That notice is required to inform the registered owner that they have 21 days to do one of the following: claim the vehicle; request a post-immobilization and post-towing hearing; or request a 15-day extension. (*Id.*) In the event that the vehicle's owner does not take any of those actions within 21 days of the date of the notice, the MCC provides that the vehicle may be sold or "otherwise disposed of in the manner proscribed by Section 4-208 of the Illinois Vehicle Code." (*Id.* ¶ 26 (quoting MCC § 9-100-120(f)).) That referenced provision, 625 ILCS 5/4-208(a), requires that an additional notice be sent to the registered owner of an impounded vehicle as a precondition to the City's ability to dispose of it. (*Id.* ¶¶ 18–21.) Similarly, the MCC requires that the City provide two notices before disposing of unclaimed impounded vehicles. (*Id.* ¶ 33 (citing MCC § 9-92-100(a)).) Yet Lacy received no additional notice after the initial December 12, 2019 notice of impoundment. (*Id.* ¶ 62.) Moreover, although Lacy contacted the City on December 31, 2019, to request a 15-day extension of her deadline to secure the release of her vehicle, she claims that her request was not

honored. (*Id.* ¶¶ 64, 66.) Rather, before the 15-day extension period had elapsed, Lacy learned through the City's website that her vehicle had been disposed of. (*Id.* ¶ 66.) Specifically, the City disposed of Lacy's vehicle by selling it to URT for the vehicle's scrap value, even though her vehicle's actual value substantially exceeded the scrap price. (*Id.* ¶¶ 67–68.)

According to Lacy, the City's actions in impounding and disposing of her vehicle without following the proper procedures violated not only the relevant state and local laws, but also her rights under the U.S. Constitution. Lacy's FAC therefore asserts nine[1] claims on behalf of herself and a putative class. First, Lacy alleges that the City violated Section 4-208 of the Illinois Vehicle Code, 625 ILCS 5/4-208, by disposing of her vehicle without sending her a second notice (Count II). Relatedly, Lacy contends that the City's failure to provide a second notice also violated Chicago's own ordinance, namely MCC section 9-92-100 (Count III). She also requests that the Court declare that the City's policy or practice of disposing vehicles without issuing an additional notice violates 625 ILCS 5/4-208 and MCC section 9-92-100 (Count VI). Next, Lacy contends that the City violated MCC section 9-100-120(f) when it failed to honor her request for a 15-day extension (Count IV), seeks a declaratory judgment to that effect (Count IX), and asks that the Court issue a writ of mandamus directing the City to honor all 15-day extension requests (Count V). Lacy also asserts two claims pursuant to 42 U.S.C. § 1983, alleging that the City violated the Takings Clause of the Fifth Amendment to the U.S. Constitution. One of those claims arises out of the City's practice of disposing of impounded vehicles without issuing a second notice (Count VII) and the other arises out of the City's practice of disposing of

---

[1] Originally, Lacy's FAC asserted a tenth claim under 42 U.S.C. § 1983 based on an alleged violation of her procedural due process rights (Count I), but Lacy has since withdrawn that claim.

impounded vehicles without honoring the owner's request for a 15-day extension (Count VIII).

Finally, Lacy asserts an unjust enrichment claim against both the City and URT (Count X).

## DISCUSSION

Together, Defendants' motions seek dismissal of the FAC in its entirety pursuant to Rule

12(b)(6). In addition, the City argues that certain of Lacy's claims fail for lack of standing and

are subject to dismissal pursuant to Rule 12(b)(1). The Court begins by addressing the City's

standing arguments before proceeding to determine whether Lacy has sufficiently pleaded her

claims.

### I.     Standing

Standing is an essential component of Article III's limitation of federal courts' judicial

power only to cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

"The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to

seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). There are

three elements that constitute the "irreducible constitutional minimum" of standing. *Lujan*, 504

U.S. at 560. A "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo*, 578 U.S. at 338 (internal quotation marks omitted). Where a plaintiff does not

have Article III standing, a federal district court lacks subject-matter jurisdiction to hear their

claims. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

A defendant may raise either a facial or factual challenge to a plaintiff's standing. *Silha v.

ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A facial challenge requires "only that the court

look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter

jurisdiction." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). By

contrast, "a factual challenge lies where the complaint is formally sufficient but the contention is

that there is *in fact* no subject matter jurisdiction." *Id.* at 444 (internal quotation marks omitted). Where a defendant mounts a factual challenge, "the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 807 F.3d at 173. Once a defendant has proffered evidence calling the plaintiff's standing into question, "the presumption of correctness that [is] accord[ed] to a complaint's allegations falls away . . . and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digit.*, 572 F.3d at 444 (internal quotation marks and citations omitted).

Here, the City raises a factual challenge to Lacy's standing to assert her claims predicated on the City's alleged failure to honor 15-day extension requests. It also contends that Lacy's allegations are facially insufficient to plead her standing with respect to her claims seeking injunctive and declaratory relief.

### A. 15-Day Extension Claims

Under MCC section 9-100-120(f), the City is required to give notice to the owner of a vehicle that has been impounded after previously being immobilized that they must claim their vehicle (*i.e.*, pay their outstanding ticket debt) within 21 days of the date of that notice. However, that provision also provides that "the registered owner may request . . . one extension of 15 days before a vehicle is sold or otherwise disposed of." MCC § 9-100-120(f). Lacy alleges in the FAC that she requested such an extension on or about December 31, 2019, yet "[p]rior to the expiration of the mandatory 15-day extension, [she] discovered through the City's website that her vehicle had been sold or otherwise disposed of." (FAC ¶ 66.)

In response to Lacy's allegation, the City comes forward with evidence that it claims proves that Lacy's 15-day extension request was, in fact, honored, such that she suffered no injury-in-fact traceable to the City's supposed refusal to honor her request. Specifically, the City has submitted the declaration of Robert Dyckman, the City employee responsible for overseeing

the operation of the City's automobile pounds. That declaration states that the City mailed

Lacy's notice of impoundment on December 13, 2019. (Dyckman Decl. ¶ 6, Dkt. No. 43-1.)

Without an extension request, Lacy would have had 21 days, or until January 3, 2020, to claim

her vehicle or request an extension. But Lacy did request an extension on December 31, 2019

(*id.* ¶ 7), and, presumably, the requested extension would run only after the expiration of the

initial 21-day period—January 3, 2020. Thus, given Lacy's extension request, the City could not

sell or dispose of Lacy's vehicle prior to January 18, 2020.

According to Dyckman, he received and processed Lacy's extension request. (*Id.* ¶¶ 7–9.)

And attached to his declaration is the email chain in which he confirms that Lacy's vehicle

would be placed on hold due to her extension request.[2] (Ex. 2 to Dyckman Decl., Dkt. No. 43-1.)

Dyckman further states that Lacy's vehicle remained at the pound through January 22, 2020, and

then was disposed of as of that date. (Dyckman Decl. ¶¶ 10–11.) Despite being confronted with

the City's evidence showing that Lacy's extension request was fully honored, Lacy comes

forward with no evidence of her own. Instead, she simply parses certain language in the City's

evidence in an effort to show that it fails to call into question her allegations supporting standing.

To provide further clarity, the City's reply brief attaches a second declaration from Dyckman in

which he definitively states that Lacy's "vehicle was sold to [URT] on . . . January 22, 2020" and

"left the pound after [that] date." (Suppl. Dyckman Decl. ¶¶ 6–7, Dkt. No. 55-1.)

---

[2] The Court notes that the email evidence shows that the City intended to honor Lacy's extension only through January 15, 2020, suggesting that the extension would run not from the expiration of the 21-day period but from the date of Lacy's request. Had the vehicle been disposed of after January 15, 2020, but before January 18, 2020, Lacy may well have been able to show that her extension request was not honored. However, this is not an argument that Lacy makes and there is no evidence suggesting that her vehicle was disposed of during that period.

The Court finds that the City's evidence sufficiently raises a factual question as to Lacy's standing so as to shift the burden to Lacy to submit her own proof of her standing. Again, Lacy has submitted no evidence on the issue and stands on the FAC's allegation that she learned through the City's website of her vehicle's disposal on some unspecified date prior to the expiration of the 15-day period. To the extent the apparently erroneous representation as to her vehicle's sale date on the City's website's could establish standing, Lacy would at least need proof of that representation to rebut the City's factual attack. Absent such proof, Lacy has no standing to assert her claims based on the City's failure to honor 15-day extension requests. *See, e.g.*, *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (affirming dismissal for lack of subject-matter jurisdiction where the defendant raised a factual challenge and the plaintiff chose to rely only on its controverted jurisdictional allegations). Accordingly, Counts IV, V, VIII, and IX of the FAC are dismissed.

### B.     Injunctive and Declaratory Relief

The City also contends that Lacy lacks standing to seek injunctive relief and a declaratory judgment as to the City's alleged failure to dispose of her vehicle without providing her a second notice following its impoundment. To demonstrate standing for prospective injunctive relief, Lacy "must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic*, 851 F.3d at 738 (internal quotation marks omitted). "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief: 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). She must similarly show "a realistic danger of sustaining a direct injury" to seek declaratory relief. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

Here, the City claims that Lacy's injury is entirely in the past and the prospect of her suffering a future injury is too speculative to support either injunctive or declaratory relief. On the other hand, Lacy asserts that she faces an immediate prospect of future injury given that the traffic citations underlying the impoundment and disposal of her vehicle remain unpaid. (FAC ¶ 71.) In such circumstances, the City "will keep the registered owner on the City's immobilization list" such that, "until the registered owner of a vehicle that the City disposed of pays the entire amount of allegedly outstanding traffic citations, the registered owner continues to face the threat that the City will immobilize, impound, and dispose of any additional vehicles that the individual owns." (*Id.* ¶ 49.)

As the City acknowledges, this Court has already addressed this issue in ruling on the motions to dismiss in *Walker v. City of Chicago*, No. 20-cv-01379, 2022 WL 17487813 (N.D. Ill. Dec. 6, 2022), another case before this Court that is related to Lacy's case because it challenges the same City practices as to the additional or second notice issue. In *Walker*, this Court found that one of the two plaintiffs, Walker, had standing to seek both injunctive and declaratory relief regarding the City's failure to provide a second notice prior to disposing of her vehicle based on her allegation that she "obtained a new vehicle but still has three unpaid tickets." *Id.* at *8. Consequently, the Court determined that Walker faced a realistic and immediate threat of future injury since the City could immobilize, impound, and scrap her new vehicle. By contrast, this Court found that the other plaintiff, Walawski, lacked standing to assert claims for declaratory and injunctive relief because he failed to "offer[] a compelling theory for why [he] is likewise subject to an immediate threat of future injury." *Id.* at *9.

The City seems to accept that the Court's determination in *Walker* finding standing as to Walker controls here,[3] without apprehending that Lacy's circumstances, at least as pleaded, are more comparable to Walawski, who was found to lack standing. While not explicitly stated in the Court's opinion, the dispositive factor differentiating Walker from Walawski was Walker's allegation that she had obtained a new vehicle that was at immediate risk of being impounded due to her outstanding ticket debt. Lacy, however, is in the same position as Walawski, because the FAC does not allege that Lacy has obtained a new vehicle to replace the 2003 Honda Odyssey that the City impounded and subsequently sold for scrap. Consequently, any threatened injury Lacy faces is overly speculative, since it depends not only on Lacy purchasing a new vehicle but also making that purchase while some or all of her current ticket debt remains outstanding. The fact that such eventualities must come to pass before Lacy can again be injured by the City's deficient notice practices demonstrates that her risk of injury is not sufficiently immediate to give her standing to seek injunctive and declaratory relief. For that reason, Count VI of the FAC is dismissed along with its request for injunctive relief.

## II.     Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[3] In its opening brief, the City acknowledges that this Court rejected its declaratory and injunctive relief standing arguments as to one of the *Walker* plaintiffs but says it advances the same arguments against Lacy to preserve the issue. (City's Mem. in Supp. of Mot. to Dismiss at 11 n.5, 24 & n.14, Dkt. No. 48.)

defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7ᵗʰ Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Having resolved the City's standing challenges, the remaining claims are: the § 1983 Takings Clause claim against the City arising from the City's purported failure to provide additional notice prior to selling or disposing of impounded vehicles; claims against the City alleging that its failure to provide the requisite two notices violates state and local law; and a claim for unjust enrichment against both the City and URT.

### A.    Takings Clause

Lacy asserts that the City violated the Fifth Amendment's Takings Clause by sending one notice following its impoundment of her vehicle, rather than the two notices required by the MCC and Illinois law. Due to its failure to send her a second notice, Lacy argues that the City lacked authority to dispose of her vehicle without also providing just compensation.

The Fifth Amendment's Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Accordingly, "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). To state a claim for a violation of the Takings Clause, a plaintiff must allege "(1) that the governmental entity 'took' [her] property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation." *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021).[4]

---

[4] The Takings Clause was incorporated against the States by the Fourteenth Amendment. *Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (2005).

Lacy's vehicle was first immobilized and then impounded under MCC section 9-100-120. Under MCC section 9-100-120(f), the City is required to send out a notice of impoundment informing the vehicle's owner that "if the vehicle is not claimed within 21 days from the date of notice, the vehicle may be sold or otherwise disposed of in the manner prescribed by Section 4-208 of the Illinois Vehicle Code." MCC § 9-100-120(f). The referenced provision of the Illinois Vehicle Code, in turn, provides, in relevant part:

> In cities having a population of more than 500,000 [*i.e.*, Chicago], whenever an abandoned, lost, stolen, or unclaimed vehicle, or vehicle determined to be a hazardous dilapidated motor vehicle . . . remains unclaimed by the registered owner, lienholder or other legally entitled person for a period of 18 days after notice has been given . . . ***if during that 18 days the possessor of the vehicle has sent an additional notice*** by first class mail to the registered owner, lienholder, or other legally entitled person, the vehicle shall be disposed . . . to a person licensed as an automotive parts recycler, rebuilder, or scrap possessor under Chapter 5 of this Code.

625 ILCS 5/4-208(a) (emphasis added). Lacy asserts that MCC section 9-100-120(f) pertains only to the manner of notice but does not actually authorize the disposal of impounded vehicles. She points to MCC section 9-92-100 as the provision providing for such authority. Using similar language to 625 ILCS 5/4-208(a), section 9-92-100(a) states:

> Whenever an abandoned, lost, stolen, or other impounded motor vehicle, or a vehicle determined to be a hazardous dilapidated motor vehicle . . . remains unclaimed by the registered owner, lienholder or other person legally entitled to possession for a period of 18 days after notice has been given . . . if, during that 18-day period, the department of police or department of streets and sanitation has sent an additional notice by first class mail to the registered owner, lienholder, or other legally entitled person, the superintendent of police or commissioner of streets and sanitation shall authorize the disposal or other disposition of such unclaimed vehicles as provided in this section . . . .

MCC § 9-92-100(a). Like 625 ILCS 5/4-208(a), MCC section 9-92-100(a) mandates that the City issue two notices to a vehicle's owner before it may sell or dispose of that vehicle. According to Lacy, by failing to supply her with an additional notice following the initial notice

of impoundment, the City effected a taking for which just compensation was required when it proceeded to dispose of her vehicle and fully retain the benefits.

In the *Walker* case, discussed above, this Court determined that the City's failure to provide a second notice before disposing of an impounded vehicle stated a Takings Clause claim. *Walker*, 2022 WL 17487813, at *3–5. Most of the City's arguments here simply rehash the arguments that this Court previously rejected in its ruling on the *Walker* motions to dismiss, and the City has given no reason for the Court to reconsider those issues.[5] Briefly summarized, the Court agreed in *Walker* that MCC section 90-100-120(f) only addressed the "notice requirements regarding towing and impoundment of vehicles for ticket debt," whereas the relevant procedures for actually disposing of impounded vehicles are determined by reference to MCC section 9-92-100. *Id.* at *6. The Court was not persuaded that MCC section 90-100-120(f) superseded section 9-92-100(a)'s two-notice requirement, observing that section 90-100-120(f) instructs that notice under that provision should warn the vehicle's owner that failure to claim their vehicle would result in the vehicle's disposal pursuant to 625 ILCS 5/4-208(a), and that provision includes a two-notice requirement. *Id.*

Consistent with the Supreme Court's ruling in *United States v. Bennis*, 516 U.S. 442 (1996), this Court found that the City's legislative scheme for disposing of impounded vehicles was not facially unconstitutional. *Walker*, 2022 WL 17487813, at *4. *Bennis* recognized that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452. And, in *Walker*, this Court found that the City's vehicle

---

[5] The City concedes that the Court's decision in *Walker* rejected most of their arguments and they raise them here only for preservation purposes.

forfeiture scheme was not facially unconstitutional under the Takings Clause because it constituted the type of forfeiture process that *Bennis* determined was "firmly fixed in the punitive and remedial jurisprudence of the country." *Id.* at *4 (citing *Bennis*, 516 U.S. at 453). Turning to the plaintiffs' challenge to the manner in which the City carried out the vehicle disposal process, this Court emphasized that *Bennis* held only that the Takings Clause does not apply where the government "***lawfully*** acquired [the property] under the exercise of governmental authority other than the power of eminent domain." *Id.* at *5 (quoting *Bennis*, 516 U.S. at 452). By contrast, the *Walker* plaintiffs alleged that "Defendants ***unlawfully*** acquired vehicles by taking and disposing of them without providing required notices." *Id.*

Because the *Walker* plaintiffs "sufficiently pleaded the City's failure to comply with the two-notice requirement," this Court determined that their Takings Clause claim based on the City's allegedly unlawful acquisition and disposal of their vehicles was not precluded by *Bennis*. *Id.* Further, the Court determined that the City took the plaintiffs' vehicles for a public use because the sale proceeds generated revenue for the City's operations and none of those proceeds were used to pay down the owners' debts. *Id.* Consequently, the *Walker* plaintiffs stated a Takings Clause claim based on the City's disposal of their vehicles without providing them with a second notice. *Id.* The Court's analysis in *Walker* applies equally to Lacy's Takings Clause claim.

The City does highlight two cases not previously discussed in connection with the *Walker* motions to dismiss. Specifically, the City argues that the Court's holding in *Walker* cannot be reconciled with the Supreme Court's statement in *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 543 (2005), that "if a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of

the inquiry. No amount of compensation can authorize such action." Thus, the City contends that this Court's determination that its acquisition of the *Walker* plaintiffs' vehicles was unlawful necessarily means that it cannot have been a taking.

As an initial matter, the Court notes the "heads I win, tails you lose" nature of the City's Takings Clause argument. On one hand, if the City provides two notices, it lawfully acquires the vehicle under a forfeiture process and there is no taking for which just compensation is required. On the other hand, if the City does not provide two notices, it unlawfully acquires the property and there is no taking for which just compensation is required.

In any case, the City interprets *Lingle* more broadly than warranted. *Lingle* involved a challenge to a regulatory taking[6] and the statement on which the City relies was made in the course of rejecting a regulatory takings test under which the existence of a taking necessitated an inquiry into whether the regulation "substantially advance[s] legitimate state interests." *Id.* at 540, 543. The Supreme Court explained that such a test entailed an inquiry into "the regulation's underlying validity," which it deemed improper in the takings context because "the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose." *Id.* at 543. This Court does not believe that the portion of *Lingle* cited by the City has any relevance here, where there has been a direct physical appropriation of private property of which the City has put to a public use. *See Tahoe-Sierra Pres. Council*, 535 U.S. at 323 ("Th[e] longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it inappropriate to treat cases involving physical

---

[6] As opposed to a direct government appropriation or physical invasion of private property, a regulatory taking refers to a regulation of property that "goes too far." *Lingle*, 544 U.S. at 537–38 (internal quotation marks omitted).

takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa." (footnote omitted)).

Further, that the City sold or disposed of Lacy's vehicle without properly adhering to the procedures mandated by state and local law does not establish that the City's interference with her property was impermissible. The two-notice requirement is the culmination of the City's vehicle forfeiture scheme, which constitutes an exercise of its police power. *Walker*, 2022 WL 17487813, at *4–5. Where an impounded vehicle's owner has received two notices but not claimed their vehicle after 21 days, the owner has forfeited their property rights in the vehicle. *Id.* at *4. At that point, the City may do what it wants with the property without any obligation to compensate its former owner. *Cf. Cerajeski v. Zoeller*, 735 F.3d 577, 581 (7th Cir. 2013) ("***Of course*** the state can take abandoned property without compensation—there is no owner to compensate."). Yet, without the second notice, forfeiture has not been perfected and any action taken by the City is outside the scope of the forfeiture scheme. This is what the Court meant when it spoke of the City "***unlawfully*** acquiring vehicle[s] by taking and disposing of them." *Id.* at *5. The City's failure to follow the legally mandated procedures of its forfeiture scheme precludes it from claiming that it disposed of Lacy's vehicle pursuant to its police powers. Without any other source of authority allowing the City to acquire Lacy's vehicle permanently, the City's disposal of her property and subsequent public use of the proceeds was a taking. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021) ("The government commits a physical taking . . . . when the government physically takes possession of property without acquiring title to it.").

The City also contends that this Court should reconsider its ruling in *Walker* in light of the Fifth Circuit's decision in *Lafaye v. City of New Orleans*, 35 F.4th 940 (5th Cir. 2022), which

concluded that there was no Takings Clause claim in what the City claims were factually analogous circumstances. Specifically, in *Lafaye*, the plaintiffs alleged that New Orleans implemented an automated traffic enforcement system that a state court later ruled to be void *ab initio*. *Id.* at 942. As a result of the state court's ruling, the plaintiffs were entitled to a reimbursement of the fines imposed under that system. After the fines were not returned, they brought suit in federal district court, alleging that New Orleans's retention of the fines constituted a taking. The Fifth Circuit disagreed. Citing much of the same language in *Lingle* as relied upon by the City here, the Fifth Circuit found no taking because "New Orleans exacted money using an enforcement power that was later deemed *ultra vires*." *Id.* at 943.

This Court finds *Lafaye* to have limited persuasive authority as applied to the circumstances here. The key factor distinguishing *Lafaye* is that, given the later state court ruling, New Orleans at no point had the legal authority to acquire the plaintiffs' money. Moreover, the Fifth Circuit was troubled by the "logical contradiction" inherent in the plaintiffs' legal theory:

> [The plaintiffs] advance two propositions: The taking did not arise until the moment the [state court] judgment became final, and it arose only because the money was ***initially*** taken with no claim of right. Both contentions are necessary—to relitigate the initial extraction of fines under [the traffic enforcement system] would raise serious *res judicata* concerns, while fixating on the city's failure to return the money would turn all money judgments against governments into takings. But in their attempt to avoid those pitfalls, the plaintiffs find themselves trying to have their cake and eat it too. They conceive of the city as "taking" their money in 2019, even when that money had been in the city's possession since 2010 at the latest. And they insist that the city's conduct from 2008 to 2010 was necessary to effect a taking that did not actually arise until 2019. Such a theory sits uneasily with a linear conception of time and is not rooted in the text of the Fifth Amendment.

*Id.* at 943–44. In *Lafaye*, New Orleans made a permanent claim to the fines that it collected pursuant to a system that, years later, was deemed to be void from the start.

By contrast, here, there is no question that the City lawfully took temporary possession of Lacy's car until it exercised a permanent claim to that property without providing the two notices that were preconditions to doing so. Such a taking proceeded linearly—absent the second notice, the taking was effected the instant that the City permanently deprived Lacy of her property. *See Conyers v. City of Chicago*, No. 12-CV-06144, 2020 WL 2528534, at *10 (N.D. Ill. May 18, 2020) ("Nothing in *Bennis* or the other cases relied on by the City suggests that there can be no compensable taking when the state deprives a property owner of all rights to property as to which the state has only temporary custody."), *aff'd*, 10 F.4th 704 (2021).

Like the plaintiffs in *Walker*, Lacy has adequately stated a Takings Clause claim based on the City's failure to provide two notices before selling or disposing of her impounded vehicle. The Court therefore denies the City's motion to dismiss Count VII.

## B.    MCC and Illinois Vehicle Code

In addition to her Takings Clause claim based on the City's failure to comply with the two-notice requirement, Lacy also seeks to assert claims under MCC section 9-92-100(a) and 625 ILCS 5/4-208(a), the respective local-ordinance and state-law provisions imposing that requirement. Neither provision expressly creates a private right of action. Nonetheless, Lacy urges the Court to find in each an implied private right of action available to those aggrieved by the City's failure to provide two notices before disposing of their vehicles.

In the absence of an express right of action, it is well-established in Illinois that sometimes it is proper for a court to find "that a private right of action is implied in a statute." *Metzger v. DaRosa*, 805 N.E.2d 1165, 1168 (Ill. 2004). A court may find an implied right of action when:

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4)

18

implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117–18 (Ill. 1999). All four factors must be satisfied before a private right of action will be implied. *1541 N. Bosworth Condo. Ass'n v. Hanna Architects, Inc.*, 196 N.E.3d 1108, 1116 (Ill. App. Ct. 2021). In addition, "[a] court should use caution in implying a private right of action because, in doing so, it is assuming the policy-making authority more appropriately exercised by the legislature." *Helping Others Maintain Env't Standards v. Bos*, 941 N.E.2d 347, 363 (Ill. App. Ct. 2010).

The Court does not believe that a private right of action can be implied with respect to either MCC section 9-92-100(a) or 625 ILCS 5/4-208(a) for two reasons. First, the Court does not believe that plaintiffs like Lacy are within the class for whose benefit the statute was enacted. "In interpreting legislative enactments, courts must read the statute as a whole, not as isolated provisions." *Fisher*, 722 N.E. 2d at 1119; *see also Stern v. Great W. Bank*, 959 F. Supp. 478, 484 (N.D. Ill. 1997) ("[T]he statute should be interpreted as a whole, looking at every relevant section in relation to other sections."). Viewed in the context of the broader statutory scheme, 625 ILCS 5/4-208(a) is but one provision within a statute setting out procedures for governmental actors to follow when removing and disposing of abandoned vehicles. It is meant to regulate governmental action with respect to abandoned vehicles, rather than to redress wrongs inflicted against their owners. *Moore v. Lumpkin*, 630 N.E.2d 982, 996 (Ill. App. Ct. 1994) ("[I]n determining whether a private right of action should be implied, it is proper to ask whether the statute is remedial, *i.e.*, does the statute seek to redress wrongs against individuals who are harmed because the statue is violated.").

The two-notice requirement is a means of providing due process for the registered owners of the vehicle and, as such, confers upon them an incidental benefit; at the same time, that

19

process also ensures that title over the vehicle is effectively transferred to the state or municipality. *See Cretella v. Azcon, Inc.*, 214 N.E.3d 178, 188 (Ill. App. Ct. 2022) ("Where a particular provision of a statute provides incidental benefits to one class but does so in order to benefit the primary class for whose benefit the statute was enacted, no private right of action will be implied in favor of the class provided such incidental benefits."). Likewise, MCC section 9-92-100(a) plays a similar role within an ordinance authorizing the City to open and maintain automobile pounds.

Second, implying a private right of action is not necessary to provide a remedy for the City's failure to comply with the two-notice requirement, as demonstrated by Lacy's ability to maintain a Takings Clause claim based on that failure. *See Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999) (declining to imply a private right of action where "a common law negligence action effectively implements the public policy behind the Act" as "[t]he threat of liability is an efficient method of enforcing a statute").

In sum, Lacy cannot assert a claim under either MCC section 9-92-100(a) or 625 ILCS 5/4-208(a), as both lack an express right of action and neither is amenable to the implication of a private right of action. Consequently, Counts II and III are dismissed with prejudice.

### C.    Unjust Enrichment

Finally, Lacy asserts claims for unjust enrichment against both Defendants. The doctrine of unjust enrichment provides relief where "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). However, "[u]nder Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019).

Instead, "an unjust enrichment claim will stand or fall with related claims founded on the same improper conduct." *Anderson v. Rush St. Gaming, LLC*, No. 1:20-cv-04794, 2021 WL 4439411, at *7 (N.D. Ill. Sept. 28, 2021) (internal quotation marks omitted).

Just as the Court found in *Walker*, the viability of one of Lacy's Takings Clause claims against the City allows the related unjust enrichment claim to proceed as well. *Walker*, 2022 WL 17487813, at *7. On the other hand, unjust enrichment is the sole claim in the FAC asserted against URT. The FAC sets forth no other, independent claim against URT, even though, in Illinois, unjust enrichment is a "request for relief" that is "tied to the fate of" an independent cause of action. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019). Lacy cannot save her unjust enrichment claim against URT by piggybacking onto the Takings Clause claim asserted against the City. Like the Court found in *Walker*, Lacy has failed to plead that URT was the "moving force" behind the taking because her allegations show that "URT is implicated only in the towing and impoundment of vehicles, and [Lacy does] not adequately allege that the towing and impoundment, standing alone, violated the Takings Clause." *Walker*, 2022 WL 17487813, at *10.[7] Thus, the unjust enrichment claim against URT stands alone in the FAC. And since there is no standalone claim for unjust enrichment in Illinois, URT's motion to dismiss is granted.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss (Dkt. No. 42) is granted in part and denied in part, and URT's motion to dismiss (Dkt. No. 44) is granted. The claims against

---

[7] In *Walker*, the plaintiffs were able to proceed with their unjust enrichment claim against URT because one plaintiff adequately stated a declaratory judgment claim against both Defendants for not complying with MCC section 9-92-100 and 625 ILCS 5/4-208's two-notice requirement. *Walker*, 2022 WL 17487813, at *7. There is no similar declaratory judgment claim remaining in this case given Lacy's lack of standing to seek that relief.

URT are dismissed, as are Counts IV, V, VI, VIII, and IX and the request for injunctive relief.

Counts II and III are dismissed with prejudice.

ENTERED:

Dated:  March 31, 2024

_____
Andrea R. Wood
United States District Judge