**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MIYAH LACY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 21-cv-6783 |
| CITY OF CHICAGO, a municipal corporation, | ) ) ) | Hon. Andrea R. Wood |
| Defendant. | ) ) ) ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM**

1.      Plaintiff brings this lawsuit as a class action on behalf of herself and a class of individuals whose vehicles were impounded by the City and/or its designee(s), and were sold, scrapped, or otherwise disposed of without sufficient notice, and without any compensation to the owner of the vehicle.

**ANSWER:** The City admits only that Plaintiff purports to bring this lawsuit on behalf of herself

and the proposed class described in Paragraph 1. The City denies any remaining allegations in

Paragraph 1.

2.      Defendants tow and impound tens of thousands of vehicles each year.[1] The vast majority are impounded because either the vehicle is parked in a hazardous location or in violation of the winter street parking ban, or because the owner of the vehicle has multiple unpaid traffic citations.[2]

**ANSWER:** The City states that it lacks knowledge or information sufficient to form a belief as to

the truth of any WBEZ investigation and WBEZ's analysis of any data it may have obtained from

---

[1] *See* Elliott Ramos, Chicago's Towing Program is Broken, WBEZ (Apr. 1, 2019), available at: http://interactive.wbez.org/brokentowing/ ("Chicago impounded 93,857 vehicles [in 2017]. It sold just under 24,000 of them—or an average of 66 cars a day—each for less than $200.").

[2] *See id.*

any source including the City, and therefore denies the allegations contained in Paragraph 2 and

Footnotes 1 and 2.

3.     When the City immobilizes, tows, and/or impounds a vehicle, the owner of the vehicle is assessed various fees—such as a boot removal fee, towing fee, and per-day storage fees. In order to reclaim the vehicle, the owner must pay all outstanding traffic citations, fees associated with impounding the vehicle, and any late penalties and collection fees.

**ANSWER:** With respect to the first sentence of Paragraph 3, the City admits only that a vehicle

that has been immobilized is assessed a boot fee and that an immobilized vehicle that has been

impounded is assessed a tow fee and a per-day storage fee. The City denies all remaining

allegations contained in the first sentence of Paragraph 3. The City denies the allegations contained

in the second sentence of Paragraph 3.

4.     If the vehicle owner is not able to pay all amounts allegedly owed within 18 days after the City issues a notice of towing and impoundment, the City will sell the vehicle, to URT, for only a fraction of the value of the vehicle. The City does not consider the age, condition, or value of the impounded vehicle, but, instead, sells impounded vehicles to URT for the scrap value of the impounded vehicle.[3]

**ANSWER:** The City denies the allegations contained in the first sentence of Paragraph 4. With

respect to the second sentence of Paragraph 4, the City admits that a contract between it and URT

sets forth a method for determining the scrap value the City receives from URT, which applies to

unclaimed vehicles where a contract sale to URT is completed. The City denies the remaining

allegations contained in the second sentence of Paragraph 4. With respect to Footnote 3, the City

states that it lacks knowledge or information sufficient to form a belief as to the truth of any WBEZ

investigation and WBEZ's analysis of any data it may have obtained from any source including

the City, and therefore denies the allegations contained in Footnote 3.

5.     The City fails to provide adequate notice to vehicle owners that the vehicle will be sold, scrapped or otherwise destroyed.

---

[3] *See id.*

**ANSWER:** The City denies the allegations contained in Paragraph 5.

6. Incredibly, the City also fails to apply the proceeds from the sale of the vehicles to the amounts the vehicle owner allegedly owes in outstanding traffic tickets or for the fees associated with impounding the vehicle. Instead, the City retains the proceeds of the sale of impounded vehicles for itself, and still requires the owners of scrapped vehicles to pay the full amount of the ticket, fees, late-payment penalties, and costs for towing and impoundment, and potentially adding applicable collection costs and attorneys' fees, if the amount is sent to collections.

**ANSWER:** The allegations contained in the first sentence of Paragraph 6 contain legal conclusions to which no answer is required. Though no response is required, all legal conclusions contained in Paragraph 6 are denied, including any implication that the City is obligated to apply, and fails to apply, the proceeds from the sale of vehicles to reduce the amount owed for unpaid tickets. With respect to the allegations contained in the second sentence of Paragraph 6, the City admits that it retains the proceeds from completed contract sales. Further answering, following a disposition, the amount of storage costs that the owner owes to the City is eligible for reduction to $40. The City also admits that following a completed contract sale, any remaining amounts owed on the boot and tow fees and unpaid tickets are to be paid, which for the unpaid ticket portion can be done through a payment plan. The City denies the remaining allegations contained in the second sentence of Paragraph 6.

7. After URT "purchases" impounded vehicles from the City, URT either scraps the vehicles or resells them for far more than it paid the City for the "scrap" value of the vehicles.

**ANSWER:** The City admits that a contract between it and URT sets forth a method for determining the scrap value the City receives from URT, which applies to unclaimed vehicles where a contract sale to URT is completed. The City states that the remainder of the allegations in Paragraph 7 relate solely to the practices of URT and that the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations. The City denies any remaining allegations in Paragraph 7.

3

8.      Accordingly, Plaintiff brings this action, individually, and on behalf of all others similarly situated, for the City's violation of Plaintiff's and Class members' right to due process, the City's violation of the Illinois Vehicle Code, the City's violation of the Municipal Code of Chicago, the City's unlawful taking of Plaintiff's and Class members' property without just compensation, and for unjust enrichment.

**ANSWER:** The City admits only that Plaintiff purports to bring this lawsuit individually and on

behalf of all others similarly situated but denies the remaining allegations contained in Paragraph

8.

## JURISDICTION

9.      The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff brings claims under the United States Constitution and 42 U.S.C. § 1983. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:** Paragraph 9 consists of legal conclusions to which no answer is required. Though no

response is required, all legal conclusions contained in Paragraph 9 are denied.

10.     The Court has personal jurisdiction over the City because it is a municipal corporation located in Illinois and this District, maintains its offices in this District and does substantial business in this District.

**ANSWER:** Paragraph 10 consists of legal conclusions to which no answer is required. Though no

response is required, all legal conclusions contained in Paragraph 10 are denied.

11.     The Court has personal jurisdiction over URT because it is registered to conduct business in Illinois, has systematic and continuous contacts with the State, conducts substantial business in this State and within this District, and receives substantial revenues from the acts alleged herein, so as to subject itself to personal jurisdiction in this District.

**ANSWER:** Paragraph 11 consists of legal conclusions to which no answer is required. Though no

response is required, all legal conclusions contained in Paragraph 11 are denied.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or occurrences giving rise to the claims alleged herein occurred in this District.

**ANSWER:** Paragraph 12 consists of legal conclusions to which no answer is required. Though no

response is required, all legal conclusions contained in Paragraph 12 are denied.

## PARTIES

13.     Plaintiff Miyah Lacy is a resident of Cook County, Illinois, living in Dolton, Illinois.

**ANSWER:** The City states that it lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 13 and therefore denies them.

14.     Defendant City of Chicago is a municipal corporation in the State of Illinois.

**ANSWER:** The City admits the allegations contained in Paragraph 14.

15.     Defendant URT United Road Towing, Inc., d/b/a United Road Towing, Inc., is a Delaware corporation with its principal place of business located at 18861 90th Avenue, Mokena, Illinois 60448.

**ANSWER:** The City admits that URT is a Delaware corporation that transacts business in the State of Illinois as a foreign corporation under the name URT United Road Towing, Inc. The City further admits that URT had a corporate office located in Mokena, Illinois at the time of filing.

## GENERAL ALLEGATIONS

### The Illinois Vehicle Code

16.     Section 4-208 of the Illinois Vehicle Code sets forth the minimum requirements that the City must comply with prior to selling, scrapping, or otherwise disposing of an impounded vehicle.

**ANSWER:**. Paragraph 16 purports to summarize Section 4-208 of the Illinois Vehicle Code which speaks for itself. Though no response is required all legal conclusions contained in Paragraph 16 are denied.

17.     The Illinois Legislature amended Section 4-208 in 2005 to create a process that requires the City to provide the registered owner with multiple, separate notices prior to disposing of an impounded vehicle.

**ANSWER:** The City denies that the substance of the amendment of 625 ILCS 5/4-208 is properly and accurately pleaded. The legal conclusions contained in Paragraph 17, to which no answer is required, are denied, as are any remaining allegations contained in Paragraph 17.

18.     First, when a vehicle is towed and impounded the registered owner of the vehicle must be sent notice of the towing and impoundment of the vehicle on or before the earlier of ten business days after the vehicle was impounded, or two days after the identity of the registered owner is determined. *See id.* (incorporating by reference 625 ILCS 5/4-205).[4]

**ANSWER:** Paragraph 18 and Footnote 4 purport to summarize Sections 4-205 and 4-208 of the Illinois Vehicle Code which speak for themselves. Though no response is required all legal conclusions contained therein are denied.

19.     Second, a second additional notice must be sent "by first class mail to the registered owner [of the vehicle]." *See* 625 ILCS 5/4-208(a).

**ANSWER:** Paragraph 19 purports to summarize Section 4-208 of the Illinois Vehicle Code. The City admits only that some of the language contained in 625 ILCS 5/4-208(a) is quoted in Paragraph 19. The full provision speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 19 are denied.

20.     Third, if the vehicle remains unclaimed for 18 days after the first notice of towing and impoundment was sent to the registered owner, and the registered owner was sent the required "additional notice," the City may then dispose of the impounded vehicle. *Id.*

**ANSWER:** Paragraph 20 purports to summarize Section 4-208(a) of the Illinois Vehicle Code. The City admits only that the phrase "additional notice" is contained in 625 ILCS 5/4-208(a). The full provision speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 20 are denied. The City denies any remaining allegations in Paragraph 20.

---

[4] The Illinois Vehicle Code requires that notice be provided to "the registered owner, lienholder or other person legally entitled person" (herein, the "registered owner" or "owner"). 625 ILCS 5/4-208.

21.     The Illinois Legislature amended Section 4-208 to create the multi-step notification process for the purpose of ensuring the owners of impounded vehicles are provided with sufficient notice prior to the City disposing of their vehicles: "What [Section 4-208] first does is gives a second notice to these cars that have been towed . . . [and] when [the City] sold these vehicles or demolished them or whatever, the proceeds would be entitled back to the [owners]." Ill. House Tr., 2005 Reg. Sess. No. 60 (comments from Representative Robert Rita); *see also* Ill. House Tr. 2005 Reg. Sess. No. 53 (comments from Representative Black) ("they have to give you due process. They can't just take your property. . . . [Vehicle owners] have to be given notice [and] a chance to redeem" their property.").

**ANSWER:** The City denies that the substance of the legislative history regarding the amendment to 625 ILCS 5/4-208 is properly and accurately pleaded. Though no response is required, all legal conclusions contained in Paragraph 21 are denied. The City denies any remaining allegations in Paragraph 21.

### The Municipal Code of Chicago

22.     The Municipal Code of Chicago ("MCC") provides that, when the registered owner of a vehicle has accumulated three of more unpaid traffic citations, or two or more unpaid traffic citations that are more than a year old, the City may "immobilize" the vehicle. *See* MCC 9-100120(b). Prior to including a vehicle on the City's "immobilization list," the City must send notice to the registered owner of the vehicle that the vehicle will be placed onto the City's immobilization list if the outstanding traffic tickets are not paid. *See id.*

**ANSWER:** Paragraph 22 purports to summarize MCC 9-100-120(b), which speaks for itself. The City admits only that "immobilization list" appears in the text of MCC 9-100-120(b) but denies that the term "immobilize" appears in the text of MCC 9-100-120(b). The remainder of Paragraph 22 is Plaintiff's legal conclusions about the requirements of MCC 9-100-120(b). Though no response is required, all legal conclusions contained in Paragraph 22 are denied.

23.     Prior to 2019, when the City, or its agents or designees, immobilized a vehicle, the owner of the vehicle had 24 hours from when the boot is placed on the vehicle to pay all outstanding amounts owed for traffic tickets, and a $100 immobilization fee. If the owner failed to pay those amounts, the City will tow and impound the vehicle. *See* MCC 9-100-120(d), (g).

**ANSWER:** The City denies the allegations contained in Paragraph 23.

24.     In 2019, the City amended the Municipal Code to permit vehicle owners to enter into a payment plan with the City to secure release of the immobilized vehicle. *See* MCC 9-100-120(d)(1); City Counsel Journal of Proceedings, 9-18-19, p. 4521, § 3. To be eligible to enter into a payment plan, the vehicle owner must make a down payment on the total debt.[5]

**ANSWER:** The first sentence of Paragraph 24 purports to summarize MCC 9-100-120(d)(1) and City Counsel Journal of Proceedings, 9-18-19, p. 4521, § 3, which speak for themselves. Though no response is required, all legal conclusions contained in the first sentence of Paragraph 24 are denied. Further answering, the City denies any implication in the first sentence of Paragraph 24 that payment plans were unavailable prior to 2019. With respect to the second sentence of Paragraph 24, the City admits only that a vehicle owner is required to make a down payment when beginning a payment plan but otherwise denies any remaining allegations in that sentence. The City states that it lacks knowledge or information sufficient to form a belief as to the truth of Footnote 5 because the linked webpage is no longer active, and therefore denies the allegations in Footnote 5.

25.     Within ten days of when the vehicle is towed and impounded, the City must send notice by certified mail to the registered owner of the vehicle that the vehicle was impounded. *See* MCC 9-100-120(f); 9-92-070(a). The notice must state that the registered owner has 21 days to either 1) claim the vehicle, 2) request a post-immobilization and post-towing hearing, or 3) request a one-time 15-day extension. MCC 9-100-120(f).

**ANSWER:** Paragraph 25 purports to summarize MCC 9-100-120(f) and MCC 9-92-070(a), which speak for themselves. Though no response is required, all legal conclusions contained in Paragraph 25 are denied.

26.     If the vehicle is not claimed or a hearing or extension is not requested within 21 days of the date of notice, the vehicle may be sold or "otherwise disposed of in the manner proscribed by Section 4-208 of the Illinois Vehicle Code." MCC 9-100-120(f). As such, the

---

[5] *See* Payment Plan Options for Parking, Red Light Camera and Automated Speed Camera Violations, City of Chicago, https://www.chicago.gov/city/en/depts/fin/supp_info/revenue/parking_and_redlightticketpaymentplans.html (last visited Jan. 17, 2022).

additional notice requirement of Section 4-208 of the Illinois Vehicle Code is incorporated into MCC 9-100-120(f).

**ANSWER:** Paragraph 26 purports to summarize MCC 9-100-120(f). The City admits only that some of the language contained in MCC 9-100-120(f) is quoted in Paragraph 26. The full provision speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 26 are denied.

27.　　The City acknowledges that it is bound by Section 4-208 of the Illinois Vehicle Code. The City's form Notice of Vehicle Impoundment letter—which Defendants send to the registered owner of the vehicle on only a single occasion, instead of multiple separate notices required by the Illinois Vehicle Code and Municipal Code of Chicago—provides that if an impounded vehicle remains unclaimed, it "may result in the sale or other disposition of the vehicle and its contents, as provided in Section 4-208 of the Illinois Vehicle Code." (emphasis added).

**ANSWER:** The City denies the allegations in the first sentence of Paragraph 27. With respect to the second sentence of Paragraph 27, the City admits only that the words "may result in the sale or other disposition of the vehicle and its contents, as provided in Section 4-208 of the Illinois Vehicle Code" appear on the City's form Notice of Vehicle Impoundment letter. Further answering, the City denies the allegations that it sends notice on only a single occasion and that it fails to comply with the law. The City denies any remaining allegations contained in the second sentence of Paragraph 27.

28.　　To the extent that MCC 9-100-120 does not require Defendants to provide the registered owner of the vehicle with an "additional" notice that the vehicle may be disposed of, MCC 9-100-120 conflicts with Section 4-208 of the Illinois Vehicle Code.

**ANSWER:** Paragraph 28 consists of legal conclusions to which no answer is required. Though no response is required, all legal conclusions contained in Paragraph 28 are denied. The City denies any remaining allegations contained in Paragraph 28.

29.     To secure release of an impounded vehicle, the owner of the vehicle must pay "the full amount of applicable towing and storage fees . . . plus all amounts due for outstanding [traffic citations], including all related collections costs and attorney's fees . . . ." MCC 9-92-080(a).

**ANSWER:** Paragraph 29 purports to summarize, selectively quote from, and add words in brackets to MCC 9-92-080(a), which speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 29 are denied. Further answering, the City denies that owners of vehicles impounded for unpaid tickets are required to pay the full amount of their tickets to secure release of their vehicles because payment plans are available.

30.     The City assesses a $150 towing fee ($250 for vehicles over 8,000 pounds) for towing the vehicle. *Id.* at 9-92-080(b).

**ANSWER:** Paragraph 30 purports to summarize MCC 9-92-080(b), which speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 30 are denied.

31.     The City also charges a "storage fee" for keeping vehicles in the impound lots. For a passenger vehicle, the owner is assessed a "storage fee" of $20 for the first five days and $35 for each day thereafter (or $60 and $100 per day, respectively, for vehicles weighing over 8,000 pounds). *Id.*

**ANSWER:** Paragraph 31 purports to summarize MCC 9-92-080(b), which speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 31 are denied. Further answering, the City denies that the storage fee amounts set forth in Paragraph 31 represent the storage fees currently assessed by the City as of the date of the filing of this answer.

32.     If the vehicle owner seeks to secure release of an impounded vehicle by entering into a payment plan with the City, the owner must first pay all applicable immobilization, towing, and storage fees, plus a down payment on the outstanding traffic tickets. *See* MCC 9-100-160.[6]

**ANSWER:** Paragraph 32 purports to summarize MCC 9-100-160, which speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 32 are denied. With respect

---

[6] *See also* Payment Plan Options, *supra* note 5.

to Footnote 6, the City states that it lacks knowledge or information sufficient to form a belief as to the truth of Footnote 6 because the linked webpage to which it refers is no longer active, and therefore the City denies the allegations contained in Footnote 6.

33.    Like the Illinois Vehicle Code, the City's municipal code provides that if the registered owner of an impounded vehicle does not claim the vehicle within 18 days from the mailing of the notice of impoundment, and "if, during that 18-day period, the [City] has sent an additional notice by first class mail to the registered owner," the City may dispose of the vehicle. MCC 9-92-100(a). The City may dispose of unclaimed vehicles by selling the vehicle to "a person licensed as an automotive parts recycler, rebuilder or scrap processor." MCC 9-92-100(b).

**ANSWER:** The first sentence of Paragraph 33 purports to summarize MCC 9-92-100(a), which speaks for itself. Though no response is required, all legal conclusions contained in the first sentence of Paragraph 33 are denied. The second sentence of Paragraph 33 purports to summarize MCC 9-92-100(b), which speaks for itself. Though no response is required, all legal conclusions contained in the second sentence of Paragraph 33 are denied.

34.    If the value of the unclaimed vehicle "substantially exceeds its scrap value," the City may sell the vehicle "at a public auction to a person licensed as an automotive parts recycler, rebuilder or scrap processor." *Id.* at 9-92-100(c). At least 10 days prior to the auction of the unclaimed vehicle, the City must send notice to the registered owner of the vehicle of the time and place of the auction, and explain the steps the owner may take to reclaim the vehicle. *Id.*

**ANSWER:** Paragraph 34 purports to summarize MCC 9-92-100(c), which speaks for itself. Though no response is required, the City denies all legal conclusions contained in Paragraph 34.

35.    Alternatively, the City may dispose of an impounded vehicle by adding the vehicle to the City's fleet of vehicles. MCC 9-92-100(d). Prior to adding the vehicle to the City's fleet, the City must send notice to the registered owner of the vehicle. *Id.*

**ANSWER:** Paragraph 35 purports to summarize MCC 9-92-100(d), which speaks for itself. Though no response is required, the City denies all legal conclusions contained in Paragraph 35.

36.     Many Chicagoans are driven into bankruptcy by the rapid escalation of fines and fees associated with parking tickets, towing fees and impoundment costs.[7]

**ANSWER:** Paragraph 36 appears to contain assertions from a ProPublica investigation that is cited to in Footnote 7. The City states that it lacks knowledge or information sufficient to form a belief as to the truth of any ProPublica Illinois investigation and ProPublica Illinois' analysis of any data it may have obtained from any source including the City, and therefore denies the allegations contained in Paragraph 36 and in Footnote 7.

37.     In the past, a registered owner in such dire financial straits could sometimes get his or her vehicle back by filing for bankruptcy. Debt collection is automatically stayed upon such filing, and debtors were often able to get their vehicles out of impoundment before the City disposed of them.

**ANSWER:** Paragraph 37 is vaguely drafted but appears to be purporting to describe federal bankruptcy proceedings. The City lacks knowledge or sufficient information about the federal bankruptcy process to form a belief as to the veracity of the allegations and therefore denies the allegations contained in Paragraph 37.

38.     However, in 2017, the City amended the MCC to provide that "Any vehicle immobilized by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle." MCC 9-100-120(j). The City added the provision to prevent vehicle owners from obtaining release of their impounded vehicles if they filed for Chapter 13 bankruptcy, making clear that the City's purpose in towing, impounding, and scrapping vehicles in connection with parking violations is to collect debt by preventing bankrupt citizens from recovering their vehicles.

**ANSWER:** The first sentence of Paragraph 38 purports to summarize an amendment to MCC 9-100-120(j) contained in City Counsel Journal of Proceedings, 6-28-17, p. 51165, which speaks for itself. Though no response is required, all legal conclusions contained in the first sentence of Paragraph 38 are denied. The City denies the allegations contained in the second sentence of Paragraph 38.

---

[7] *See* Melissa Sanchez and Sandhya Kambhampati, How Chicago Ticket Debt Sends Black Motorists into Bankruptcy, ProPublica Illinois (Feb. 27, 2018), available at: https://features.propublica.org/driven-intodebt/chicago-ticket-debt-bankruptcy/.

***The City's Practice of Selling Unclaimed Vehicles for Scrap to URT***

39.     In 2017, the City impounded nearly 100,000 vehicles and sold approximately 24,000 of those vehicles for scrap.[8]

**ANSWER:** Paragraph 39 appears to contain information from a WBEZ investigation that is cited to in Footnote 8. The City states that it lacks knowledge or information sufficient to form a belief as to the truth of any WBEZ investigation and WBEZ's analysis of any data it may have obtained from any source including the City, and therefore denies the allegations contained in Paragraph 39 and in Footnote 8.

40.     The City contracts with URT for the management of towing operations in the City.[9] URT acts as the City's designee relative to towing and impounding vehicles.

**ANSWER:** With respect to the first sentence of Paragraph 40, the City admits that pursuant to a contractual relationship URT provides towing and auto pound management services to the City of Chicago. The second sentence consists of a legal conclusion. Though no response is required, the City denies all legal conclusions contained in the second sentence of Paragraph 40. The City denies any remaining allegations contained in Paragraph 40 and Footnote 9.

41.     Eighteen days after the City impounds a vehicle, if the owner of the vehicle has not secured release of the vehicle by paying all outstanding traffic citations and applicable immobilization, towing, and storage fees; requested an extension; or, post-2019, entered into a payment plan, the City will dispose of the impounded vehicle.

**ANSWER:** The City denies the allegations contained in Paragraph 41.

42.     The City has a policy and practice of disregarding requests for an extension of the deadline before the City disposes of impounded vehicles. It is the City's stated policy and practice that the Department of Streets and Sanitation has discretion whether to grant a request for an extension, and to determine the length of the extension.

---

[8] *See* Chicago's Towing Program is Broken, *supra* note 1.
[9] *See id.*

**ANSWER:** The City states that the allegations contained in Paragraph 43 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required. To the extent an answer is required, the City denies the allegations contained in Paragraph 42.

43.     The City's policy and practice is contrary to the express provisions of MCC 9-100120(f), which requires the City to honor requests for a 15-day extension. *See* MCC 9-100-120(f) ("The department of streets and sanitation **shall** honor such a request and **shall not** sell or otherwise dispose of a vehicle during the 15-day extension period.") (emphasis added).

**ANSWER:** The City states that the allegations contained in Paragraph 43 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required. To the extent an answer is required, Paragraph 43 purports to summarize MCC 9-100-120(f), which speaks for itself. Though no response is required, the City denies all legal conclusions contained in Paragraph 43, including that any practice it has violates MCC 9-100-120(f).

44.     Frequently, the City disposes of the unclaimed vehicles by selling them to URT for the scrap value of the vehicle. For example, in 2017, approximately 75% of the 32,155 unclaimed vehicles impounded by the City were sold to URT.[10]

**ANSWER:** With respect to the first sentence of Paragraph 44, the City admits that it receives the contractually determined scrap value for unclaimed vehicle in cases where a contract sale to URT is completed, but denies the characterization in Paragraph 44 that this occurs "[f]requently." The City denies any remaining allegations contained in the first sentence of Paragraph 44. The second sentence of Paragraph 44 appears to contain information from a WBEZ investigation that is cited to in Footnote 10. The City states that it lacks knowledge or information sufficient to form a belief as to the truth of any WBEZ investigation and WBEZ's analysis of any data it may have obtained

---

[10] *See id.*

14

from any source including the City, and therefore denies the allegations contained in the second sentence of Paragraph 44 and in Footnote 10.

45.     The City sells the unclaimed vehicles to URT for a fraction of the value of the vehicle, usually for $200 or less, regardless of the age, model, condition or value of the vehicle.[11]

**ANSWER:** Paragraph 45 appears to contain information from a WBEZ investigation and/or from an article by John Pearley Huffman, both of which are cited to in Footnote 11. The City states that it lacks knowledge or information sufficient to form a belief as to the truth of Mr. Huffman's article or any WBEZ investigation and WBEZ's analysis of any data it may have obtained from any source including the City, and therefore denies the allegations contained in Paragraph 45 and in Footnote 11.

46.     Defendants often fail to determine if the value of unclaimed vehicles substantially exceeds the scrap value. Instead, the City sells unclaimed vehicles to URT for the scrap value of the vehicle in order for URT to purchase the vehicles for a fraction of the market value.[12]

**ANSWER:** The first sentence of Paragraph 46 asserts a legal conclusion that the City fails to do something, which implies that it is obligated to take such action. Though no response is required, all legal conclusions contained in the first sentence of Paragraph 46 are denied. The City denies the allegations contained in the second sentence of Paragraph 46. Further answering, the City states that it lacks knowledge as to the truth of any WBEZ investigation and WBEZ's analysis of any data it may have obtained from any source including the City, and therefore denies the allegations contained in Footnote 12.

---

[11] *See id.* (noting that the City's sales to URT in 2017 included "a 2016 Ford Mustang for $176.09, a 2014 Audi A3 for $147.15, and a 2011 Mercedes M-Class for $143.33"); John Pearley Huffman, An Inside Look at Chicago's Seedy Car-Impound Netherworld, Car and Driver (Aug. 25, 2019), available at: https://www.caranddriver.com/features/a28776512/impounded-cars-chicago.
[12] *See* Chicago's Towing Program is Broken, *supra* note 1 (noting that many of the vehicles sold by the City to URT for scrap value are worth far more than the scrap value of the vehicle).

47.     The City has a policy or practice of failing to send a separate "additional" notice to the registered owners of impounded vehicles. The purpose of the policy or practice is to allow the City to sell the unclaimed vehicles to URT, so that Defendants can profit from the sale of the unclaimed vehicles at Plaintiff's and Class members' expense.

**ANSWER:** The City denies the allegations contained in Paragraph 47.

48.     Incredibly, when the City sells a vehicle to URT for scrap, the City does not use any of the proceeds from the sale of the vehicle to reduce the amounts owed by the vehicle owner.[13] Instead, the City retains for itself the entire proceeds of the sale of unclaimed vehicles to URT, and demands that the owner of the vehicle pay the entire amount outstanding for traffic citations, immobilization, towing, and storage fees, and any applicable collections costs and attorneys' fees, without providing the debtor credit for the sale of the unclaimed vehicle. *See* MCC 9-92-100(e) ("Disposal of a vehicle pursuant to this section shall not relieve the violator of liability for all costs, fines and penalties incurred in conjunction with such vehicle . . .").

**ANSWER:** With respect to the first and second sentences of Paragraph 48 the City admits that it retains the proceeds from completed contract sales. Further answering, following a disposition, the amount of storage costs that the owner owes to the City is eligible for reduction to $40. The City also admits that following a completed contract sale, any remaining amounts owed on the boot and tow fees and unpaid tickets are to be paid, which for the unpaid ticket portion can be done through a payment plan. The City denies the remaining allegations contained in the first and second sentences of Paragraph 48.   Paragraph 48 also purports to summarize MCC 9-92-100(e), which speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 48 are denied. With respect to Footnote 13, the City states that it lacks knowledge as to the truth of any WBEZ investigation and WBEZ's analysis of any data it may have obtained from any source including the City, and therefore denies the allegations contained in Footnote 13.

49.     Even after the City disposes of an impounded vehicle, if the registered owner of that vehicle has three or more outstanding traffic citations (or two or more that are more than one year old), the City will keep the registered owner on the City's immobilization list. As such, until the registered owner of a vehicle that the City disposed of pays the entire amount of allegedly

---

[13] *See id.* ("None of the proceeds go toward paying off the debt the vehicle's owner accrued during ticketing, booting and towing.").

outstanding traffic citations, the registered owner continues to face the threat that the City will immobilize, impound and dispose of any additional vehicles that the individual owns.

**ANSWER:** The City denies the allegations contained in Paragraph 49.

50.     The City knows that the vehicles impounded for unpaid traffic citations have not been abandoned by the owner, but refuses to provide the vehicle owners with just compensation for the value of their vehicle, or even reduce the amount of liability for the unpaid citations, or the towing or storage fees associated with the impoundment of the vehicle. Indeed, if the City were to consider the unclaimed vehicles as "abandoned," it would be required to reduce the amount the owner of vehicle owes to the City related to towing and storage. *See* MCC 9-92-100(e) ("with respect to disposal of an abandoned vehicle, the amount of liability for towing and storage costs shall be reduced by any amounts realized in the disposal of the vehicle in accordance with Article II of Chapter 4 of the Illinois Vehicle Code.").

**ANSWER:** The City denies the allegations contained in the first sentence of Paragraph 50. The second sentence and *See* sentence of Paragraph 50 purport to summarize and give legal conclusions about MCC 9-92-100(e), which speaks for itself. Though no response is required, the City denies all legal conclusions contained in Paragraph 50. The City denies any remaining allegations contained in Paragraph 50.

51.     The City profits handsomely from the disposal of unclaimed vehicles. In 2017, the City received approximately $4.6 million from the sale of unclaimed vehicles to URT. Additionally, the City benefits from disposing of unclaimed vehicles by adding the vehicles to the City's fleet by retaining and using the vehicle.

**ANSWER:** The City denies the allegations contained in the first sentence of Paragraph 51. The allegations contained in the second sentence of Paragraph 51 appear to come from the WBEZ investigation cited in Footnote 1 and throughout the remainder Plaintiff's Complaint. The City states that it lacks knowledge as to the truth of any WBEZ investigation and WBEZ's analysis of any data it may have obtained from any source including the City, and therefore denies the allegations contained in the second sentence of Paragraph 51. The City denies the third sentence contained in Paragraph 51.

52. The City's policy to violate both Section 4-208 and MCC 9-92-100, and the policy of selling unclaimed vehicles to URT without reducing the amount that the vehicle owner purportedly owes to the city or providing compensation for the actual value of the vehicle is designed to generate revenue for the City.

**ANSWER:** The City denies the allegations contained in Paragraph 52.

53. URT also greatly benefits from the City's sale of unclaimed vehicles. Through the scheme of purchasing the unclaimed vehicles from the City for scrap value, URT obtains vehicles for a fraction of the actual value of the vehicle. While vehicles sold to URT as scrap receive a salvage or junking title, URT can resell the vehicles for significantly more than URT paid the City for the vehicles.

**ANSWER:** The allegations contained in Paragraph 53 are all directed at former Defendant URT, which is now dismissed from this action. The City states that it lacks knowledge sufficient to form a belief about the allegations contained in Paragraph 53 and therefore denies them.

54. URT acts under color of law with respect to the immobilization, towing, impoundment and disposal of vehicles. URT acts on behalf of the City, and at the City's behest, and in furtherance of the policy and practice of both failing to send the additional notice required by Section 4-208 of the Illinois Vehicle Code and Chapter 9-92 of the MCC, and disposing of impounded vehicles without providing just compensation to the owner of the vehicle.

**ANSWER:** The allegations contained in Paragraph 53 are all directed at former Defendant URT, which is now dismissed from this action; therefore, no answer is required. To the extent an answer is required, the City states that the first sentence of Paragraph 54 asserts legal conclusions. Though no response is required, the City denies all legal conclusions in the first sentence of Paragraph 54. The City denies the allegations contained in the second sentence of Paragraph 54.

## FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF

55. Plaintiff Lacy was the registered owner of a 2003 Honda Odyssey. Plaintiff's vehicle was registered to her address in Dolton, Illinois.

**ANSWER:** The City admits that a vehicle purportedly owned by Plaintiff Lacy matches the description given in Paragraph 55 and that the registered address of such vehicle was in Dolton, Illinois. The City otherwise states that it lacks information sufficient to form a belief about any of

the remaining allegations in Paragraph 55 and therefore denies the remaining allegations contained in Paragraph 55.

56.     Prior to December 2019, Plaintiff received through the mail several traffic citations from the City. As of December 6, 2019, Plaintiff Lacy had three traffic citations from the City that were unpaid.

**ANSWER:** With respect to the first sentence of Paragraph 56, the City admits that it mailed Plaintiff several traffic citations prior to December 2019. The City otherwise states that it lacks knowledge or information sufficient to form a belief about the remaining allegations contained in the first sentence of Paragraph 56 and therefore denies them. The City denies the allegations contained in the second sentence of Paragraph 56.

57.     On or about December 6, 2019, Plaintiff Lacy parked her vehicle on the street near 2553 S. California Avenue, Chicago, Illinois. While Plaintiff Lacy was working, the City immobilized Plaintiff Lacy's vehicle.

**ANSWER:** The City admits that a vehicle registered to Plaintiff Lacy was immobilized on or about December 6, 2019 at 2553 S. California Avenue, Chicago, Illinois. The City otherwise states that it lacks knowledge or information sufficient to form a belief about the remaining allegations contained in Paragraph 57 and therefore denies such allegations.

58.     Plaintiff Lacy contacted the City and requested the City remove the immobilization device from her vehicle. The City's representative advised Plaintiff Lacy that she was required to pay the entire amount of outstanding traffic citations and applicable fees—approximately $1,200—to have the device removed. The City's representative did not advise Plaintiff Lacy that the failure to pay the amount owed would result in the City disposing of her vehicle. Plaintiff Lacy was unable to pay the amounts the City demanded.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 58 and therefore denies them.

59.     Several days later, on or about December 8, 2019, the City, through URT, towed and impounded Plaintiff Lacy's vehicle.

**ANSWER:** The City admits that the City, through URT, towed and impounded a vehicle registered to Plaintiff Lacy on or about December 8, 2019. The City lacks knowledge or information sufficient to form a belief about the allegation that "several days" after Plaintiff contacted the City her vehicle was impounded and therefore denies that allegation contained in Paragraph 59.

60.    The City claims that, on or about December 12, 2019, it mailed to Plaintiff Lacy a NOTICE OF VEHICLE IMPOUNDMENT.

**ANSWER:** The City admits that it mailed Plaintiff Lacy a Notice of Vehicle Impoundment on or about December 12, 2019.

61.    Plaintiff Lacy did not receive any notice from the City concerning the impoundment of her vehicle.

**ANSWER:** The City states that it lacks knowledge or information sufficient to form a belief about the allegations contained in Paragraph 61 and therefore denies them.

62.    Neither the City nor URT mailed Plaintiff Lacy any additional notice, as required by 625 ILCS 5/4-208(a) and MCC 9-92-100(a). In response to a Freedom of Information Request that Plaintiff Lacy made to the City for all notices sent to Plaintiff Lacy concerning her vehicle, the City produced only a single document titled Notice of Vehicle Impounded, dated December 12, 2019.

**ANSWER:** The City denies the allegations contained in the first sentence of Paragraph 62. With respect to the second sentence contained in Paragraph 62, the City admits that it produced a Notice of Vehicle Impoundment in response to Plaintiff's Freedom of Information Request.

63.    Prior to December 31, 2019, Plaintiff Lacy went in person to the Chicago Department of Revenue to discuss the impoundment of her vehicle. The City's employee, agent and/or representative advised Plaintiff Lacy that in order to secure release of her vehicle she had to pay the entire amount owed to the City. The City's employee, agent, and/or representative did not advise Plaintiff Lacy that the failure to pay the entire amount of the claimed debt within 21 days of the impoundment of her vehicle would result in her vehicle being sold or otherwise disposed of.

20

**ANSWER:** The City states that it lacks knowledge or information sufficient to form a belief about the allegations contained in Paragraph 63 and therefore denies them.

64.     On or about December 31, 2019, Plaintiff Lacy again contacted the City, through its agent or representative at the 744-PARK call center, and requested an extension of the deadline to secure the release of her vehicle in order to gather the money necessary to pay the amount that she purportedly owed the City to secure release of her vehicle. Plaintiff requested the extension of the deadline under the belief that the failure to pay the entire amount owed would result in the debt being sent to collections. Plaintiff was not advised that the failure to pay the entire amount allegedly owed would result in the City selling or otherwise disposing of her vehicle.

**ANSWER:** The City states that it lacks knowledge or information sufficient to form a belief about the allegations contained in Paragraph 64 and therefore denies them.

65.     In response to Plaintiff's request for an extension, the City's internal documents indicate that the City has a policy or practice to disregard requests for a 15-day extension: "It is at the discretion of the Department of Streets and Sanitation whether or not to honor the request [for an extension] and, if so, for how long the extension is to be granted."

**ANSWER:** The City denies the allegations contained in Paragraph 65.

66.     Plaintiff's request for a 15-day extension was not honored. Prior to the expiration of the mandatory 15-day extension, Plaintiff Lacy discovered through the City's website that her vehicle had been sold or otherwise disposed of.

**ANSWER:** The City denies the allegations contained in Paragraph 66.

67.     The City disposed of Plaintiff Lacy's vehicle by selling it to URT for the scrap value of the vehicle, and not the actual or market value of the vehicle.

**ANSWER:** The City admits that pursuant to a contract sale entered into with URT that the vehicle was transferred to URT and the City received scrap value for the vehicle. The City states that it lacks knowledge or information sufficient to form a belief about the actual market value and therefore denies the allegation that the scrap value was not the market value.

68.     The value of Plaintiff Lacy's vehicle substantially exceeded the scrap value of the vehicle.

**ANSWER:** The City states that it lacks knowledge or information sufficient to form a belief about the actual market value of Plaintiff's vehicle and therefore denies the allegations contained in Paragraph 68.

69. The City disposed Plaintiff Lacy's vehicle without providing her any compensation for the taking of her vehicle. Even after unlawfully disposing of her vehicle, the City continued to demand that Plaintiff Lacy pay the outstanding traffic citations, as well as the fees for the immobilization, towing, and impoundment of her vehicle—totaling approximately $3,000.

**ANSWER:** With respect to the first sentence of Paragraph 69, the City denies that its disposal of her vehicle was a taking and therefore denies that it owed her any compensation. With respect to the second sentence of Paragraph 69, the City denies that it unlawfully disposed of her vehicle. Further answering, the City admits only that Lacy continues to owe amounts related to the unpaid tickets that led to the impoundment as well as other tickets. The City denies the remaining allegations contained in the second sentence of Paragraph 69.

70. Eventually, the City referred the claimed debt to collections.

**ANSWER:** The City admits that it referred the outstanding amounts owed on Plaintiff's unpaid tickets to collections.

71. The City continues to allege that Plaintiff Lacy has unpaid tickets and unpaid ticket debt related to three or more violations.

**ANSWER:** The City admits that Plaintiff Lacy still has amounts due and owing related to three or more unpaid tickets.

## CLASS ALLEGATIONS

72. Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All persons who had a vehicle impounded and disposed of by the City pursuant to MCC 9-100-120 or MCC 9-92-010, et seq.

**ANSWER:** The City admits only that Plaintiff purported to bring this lawsuit on behalf of herself and the proposed class described in Paragraph 72. The City denies that this proposed class is properly defined or otherwise certifiable and denies any remaining allegations contained in Paragraph 72. Further answering, the City states that Plaintiff has abandoned the class described in Paragraph 72 in her motion for class certification as well as any claim for certification under Federal Rule of Civil Procedure 23(b)(2)

73. Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff also seeks to represent subclasses, defined as follows:

> **The Notice Subclass**
>
> All persons who had a vehicle impounded and disposed of by the City pursuant to MCC 9-100-120 or MCC 9-92-010, et seq., and for whom Defendants have no record of sending at least two separate notices prior to the disposal of the vehicle.
>
> **The Extension Subclass**
>
> All persons who had a vehicle impounded by the City and made a request to the City for an extension of time to resolve any associated debt claimed by the City, but did not receive an extension of at least 15 days.

**ANSWER:** The City admits only that Plaintiff purported to bring this lawsuit on behalf of the proposed subclasses described in Paragraph 73. The City denies that these proposed subclasses are properly defined or otherwise certifiable and denies any remaining allegations in Paragraph 73. Further answering, the City states that Plaintiff has abandoned the subclasses described in Paragraph 73 in her motion for class certification.

74. The Class and Subclasses shall be collectively referred to herein as the "Class." Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; (c) Plaintiff's counsel and Defendants' counsel; and (d) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family. Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

**ANSWER:** The City admits only that Plaintiff purported to exclude the individuals described in Paragraph 74 from the proposed Class defined in Paragraph 74. The City otherwise denies any remaining allegations contained in Paragraph 74.

75.    **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class is unknown at this time, such information being in the sole possession of Defendants and/or third parties and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Defendants' and other third party's records.

**ANSWER:** The City admits only that Plaintiff purported to bring this lawsuit on behalf of herself and the proposed Class defined in Paragraph 74. The City denies that now-abandoned Class was properly defined or otherwise certifiable and therefore denies the remaining allegations contained in Paragraph 75.

76.    Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

   a.    Whether the City has a policy or practice of not sending the registered owners of vehicles a second separate notice that the vehicle was impounded and may be disposed of;

   b.    Whether the City violated Section 4-208 of the Illinois Vehicle Code by failing to send a second separate notice to Plaintiff and Class members prior to disposing of their property;

   c.    Whether the City violated MCC 9-92-100 by failing to send a second separate notice to Plaintiff and Class members prior to disposing of their property;

   d.    Whether the City has a policy or practice that it has discretion regarding whether to honor requests for an extension of the time period before the City sells or otherwise disposes of impounded vehicles;

   e.    Whether the City's policy or practice that it has discretion regarding whether to honor requests for an extension of the time period before the City sells or otherwise disposes of impounded vehicles violates MCC 9-100120(f);

     f.     Whether the City unlawfully disposed of impounded vehicles by failing to send a second notice that the vehicle was impounded prior to disposal of the vehicle;

     g.     Whether the City unlawfully disposed of impounded vehicles by failing to honor requests for a 15-day extension prior to disposing of the vehicle;

     h.     Whether the City has a policy or practice of taking impounded vehicles for public use;

     i.     Whether the City has a policy or practice of taking the proceeds from the disposal of impounded vehicles for public use; and

     j.     Whether Defendants were unjustly enriched by disposing of Plaintiff's and Class members' property.

**ANSWER:** The City admits only that Plaintiff purported to bring this lawsuit on behalf of herself and the proposed Class defined in Paragraph 74. Further answering, the City states that the questions contained in subparts d, e, and g are no longer purported common questions because those questions were premised on claims that were dismissed by the Court on March 31, 2024. The City denies that the now abandoned Class was properly defined or otherwise certifiable and denies any remaining allegations contained in Paragraph 76.

77.   **_Typicality:_** Plaintiff has the same interest in this matter as all Class members, and plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out the uniform conduct of failing to provide the required notice to registered owners of impounded vehicles that the vehicle will be disposed of, and the disposal of impounded vehicles without providing the owners with just and adequate compensation.

**ANSWER:** The City denies the allegations contained in Paragraph 77.

78.   **_Adequacy:_** Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

**ANSWER:** The City admits only that Plaintiff purported to bring this lawsuit on behalf of herself, and the proposed Class defined in Paragraph 74. The City denies that the now abandoned Class

was properly defined or otherwise certifiable and denies any remaining allegations contained in

Paragraph 78.

79.     **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for individual Class members to effectively redress the wrongs done to them. Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**ANSWER:** The City denies the allegations contained in Paragraph 79.

80.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**ANSWER:** The City denies the allegations contained in Paragraph 80.

## FIRST CAUSE OF ACTION

### Violation of Procedural Due Process

### (42 U.S.C. § 1983)

### (On behalf of the Class and Notice Subclass against the City of Chicago)

81.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully

herein.

82.     The Fifth Amendment of the United States Constitution provides that no person shall be deprived of property without due process. U.S. Const. Amend. V.

26

**ANSWER:** The City states that the allegations contained in Paragraph 82 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

83. "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998).

**ANSWER:** The City states that the allegations contained in Paragraph 83 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

84. At all relevant times there was in full force and effect United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

**ANSWER:** The City states that the allegations contained in Paragraph 84 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

85. Actions against municipalities seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

**ANSWER:** The City states that the allegations contained in Paragraph 85 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

86. Plaintiff and members of the Class are "persons," as that term is defined by 42 U.S.C. § 1983.

**ANSWER:** The City states that the allegations contained in Paragraph 86 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

87. At all relevant times, the City and its employees, agents, or designees acted under the color of law.

**ANSWER:** The City states that the allegations contained in Paragraph 87 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

88.     The City has policy or practice of disregarding the notice requirements in both the Illinois Vehicle Code and Municipal Code of Chicago regarding providing notice to the registered owner of impounded vehicles that the vehicle will be disposed of.

**ANSWER:** The City states that the allegations contained in Paragraph 88 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

89.     The failure to provide notice to Plaintiff and Class members prior to the disposal of their vehicles is constitutionally inadequate.

**ANSWER:** The City states that the allegations contained in Paragraph 89 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

90.     By failing to adequately notify Plaintiff and Class members that their property may be disposed of, the City deprived Plaintiff and Class members of a meaningful opportunity to prevent the disposal of their property.

**ANSWER:** The City states that the allegations contained in Paragraph 90 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

91.     The disposal of Plaintiff's and Class members' impounded vehicles without notice violates Plaintiff's and Class members' right to procedural due process.

**ANSWER:** The City states that the allegations contained in Paragraph 91 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

92.     As a direct and proximate result of the City's conduct, Plaintiff and Class members suffered damages in an amount to be determined at trial.

**ANSWER:** The City states that the allegations contained in Paragraph 92 relate solely to Count I, which Plaintiff advised she withdrew on March 29, 2023; therefore no answer is required.

## <u>SECOND CAUSE OF ACTION</u>

**Violation of the Illinois Vehicle Code**

**(On behalf of the Class and Notice Subclass against the City of Chicago)**

93.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully herein.

94.     Plaintiff and Class members are entitled to enforce 625 ILCS 5/4-208. Section 4208 of the Illinois Vehicle Code was intended to protect vehicle owners, lienholders and other legally entitled persons who had a vehicle impounded from being deprived of their vehicles without receiving multiple separate notices required by Section 4-208.

**ANSWER:** The City states that the allegations contained in Paragraph 94 relate solely to Count II, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

95.     Plaintiff's and Class members' injuries are ones that Section 4-208 was designed to prevent: requiring the City to send owners of impounded vehicles multiple separate notices prior to the disposal of their vehicles.

**ANSWER:** The City states that the allegations contained in Paragraph 95 relate solely to Count II, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

96.     Implying a private right of action is consistent with the purpose of Section 4-208 as it permits persons whose vehicles were impounded by the City to ensure that the City complies with the requirement to send multiple separate notices to the registered owner of the vehicle prior to the City disposing of the vehicle and, thereby, depriving the owner of the vehicle. *See e.g.*, Ill. House Tr., 2005 Reg. Sess. No. 60 (comments from Representative Rita) ("what [Section 4-208] first does is gives a second notice to these cars that have been towed and . . . when they sold these vehicles or demolished them or whatever the proceeds would be entitled back to the [owners of the vehicles]"); Ill. House Tr. 2005 Reg. Sess. No. 53 (comments from Representative Black) ("they have to give you due process. They can't just take your property. . . . [Vehicle owners] have to be given notice [and] a chance to redeem" their property.").

**ANSWER:** The City states that the allegations contained in Paragraph 96 relate solely to Count II, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

97.     Implying a private right of action is necessary for Plaintiff and Class members to ensure that the City complies with the multiple separate notice requirement of Section 4-208.

**ANSWER:** The City states that the allegations contained in Paragraph 97 relate solely to Count

II, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


98.     The City violated Section 4-208 of the Illinois Vehicle Code by failing to send Plaintiff and Class members multiple separate notices that their vehicles were impounded by the City and the vehicles may be disposed of if the owner does not claim the vehicle or request an extension within 18 days.

**ANSWER:** The City states that the allegations contained in Paragraph 98 relate solely to Count

II, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


99.     As a direct and proximate result of the City's violation of Section 4-208, Plaintiff and Class members suffered damages, including the violation of the statutory rights provided by Section 4-208, the loss of their vehicles, and the assessment of additional fees associated with impounding the vehicles.

**ANSWER:** The City states that the allegations contained in Paragraph 99 relate solely to Count

II, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


### THIRD CAUSE OF ACTION

**Violation of the Municipal Code of Chicago—Failure to Send Additional Notices**

**(On behalf of the Class and Notice Subclass against the City of Chicago)**

100.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully

herein.


101.     Plaintiff and Class members are entitled to enforce MCC 9-92-100. Section 9-92100 of the Municipal Code of Chicago was intended to protect vehicle owners, lienholders and other legally entitled persons who had a vehicle impounded from being deprived of their vehicles without receiving multiple separate notices required by MCC 9-92-100.

**ANSWER:** The City states that the allegations contained in Paragraph 101 relate solely to Count III, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

102.    Plaintiff's and Class members' injuries are ones that MCC 9-92-100 was designed to prevent: requiring the City to send owners of impounded vehicles multiple separate notices prior to the disposal of their vehicles.

**ANSWER:** The City states that the allegations contained in Paragraph 102 relate solely to Count III, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

103.    Implying a private right of action is consistent with the purpose of MCC 9-92-100 as it permits persons whose vehicles were impounded by the City to ensure that the City complies with the requirement to send multiple separate notices to the registered owner of the vehicle prior to the City disposing of the vehicle and, thereby, depriving the owner of the vehicle.

**ANSWER:** The City states that the allegations contained in Paragraph 103 relate solely to Count III, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

104.    Implying a private right of action is necessary for Plaintiff and Class members to ensure that the City complies with the multiple separate notice requirement of MCC 9-92-100.

**ANSWER:** The City states that the allegations contained in Paragraph 104 relate solely to Count III, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

105.    The City violated Section 9-92-100 of the Municipal Code of Chicago by failing to send Plaintiff and Class members multiple separate notices that their vehicles were impounded by the City and the vehicles may be disposed of if the owner does not claim the vehicle or request an extension within 18 days.

**ANSWER:** The City states that the allegations contained in Paragraph 105 relate solely to Count III, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

106.    As a direct and proximate result of the City's violation of MCC 9-92-100, Plaintiff and Class members suffered damages, including the violation of the statutory rights provided by MCC 9-92-100, the loss of their vehicles, and the assessment of additional fees associated with impounding the vehicles.

**ANSWER:** The City states that the allegations contained in Paragraph 106 relate solely to Count III, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

## FOURTH CAUSE OF ACTION

**Violation of the Municipal Code of Chicago—Failure to Follow Mandatory 15-Day Extension Requirement of MCC 9-100-120(f)**
**(On behalf of the Class and Extension Subclass against the City)**

107.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully herein.

108.     Plaintiff and Class members are entitled to enforce MCC 9-100-120(f). Section 9100-120(f) of the Municipal Code of Chicago was intended to protect vehicle owners who had a vehicle impounded and requested a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle.

**ANSWER:** The City states that the allegations contained in Paragraph 108 relate solely to Count IV, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

109.     Plaintiff's and Class members' injuries are ones that MCC 9-100-120(f) was designed to prevent: requiring the City to honor requests for a 15-day extension of the time period before it sells or otherwise disposes of an impounded vehicle, providing the owner of the vehicle additional time to request a hearing or secure the release of the vehicle before the City permanently deprives the owner of their property.

**ANSWER:** The City states that the allegations contained in Paragraph 109 relate solely to Count IV, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

110.     Implying a private right of action is consistent with the purpose of MCC 9-100120(f) as it permits persons whose vehicles were impounded by the City to ensure that the City complies with the requirement to honor requests for a 15-day extension prior to the City disposing of the vehicle and, thereby, depriving the owner of the vehicle.

**ANSWER:** The City states that the allegations contained in Paragraph 110 relate solely to Count IV, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

111.     Implying a private right of action is necessary for Plaintiff and Class members to ensure that the City complies with the mandatory requirement of MCC 9-100-120(f) to honor requests for a 15-day extension.

**ANSWER:** The City states that the allegations contained in Paragraph 111 relate solely to Count

IV, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


112.     The City violated Section 9-100-120(f) of the Municipal Code of Chicago by creating a policy and practice that the City, through the Department of Streets and Sanitation, has discretion whether to honor a request for an extension of the time period before the City sells or otherwise disposes of an impounded vehicle, and discretion concerning the length of the extension in violation of MCC 9-100-120(f), which provides that the City **shall** honor requests for an extension, and **shall not** sell or otherwise dispose of the vehicle during the 15-day extension period.

**ANSWER:** The City states that the allegations contained in Paragraph 112 relate solely to Count

IV, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


113.     As a direct and proximate result of the City's violation of MCC 9-100-120(f), Plaintiff and Class members suffered damages, including the violation of the statutory rights provided by MCC 9-100-120(f), and the City permanently depriving vehicle owners of their property prior to the expiration of the time for owners to request a hearing or secure release of the impounded vehicle.

**ANSWER:** The City states that the allegations contained in Paragraph 113 relate solely to Count

IV, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


## FIFTH CAUSE OF ACTION

**Mandamus to Comply with MCC 9-100-120(f)**
**(On behalf of the Class and Extension Subclass against the City)**

114.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully

herein.


115.     MCC 9-100-120(f) sets forth a clear right for owners of impounded vehicles to receive a 15-day extension of the period before the City sells or otherwise disposes of an

impounded vehicle. The right to a 15-day extension in MCC 9-100-120(f) is public right for all individuals whose vehicle has been impounded by the City.

**ANSWER:** The City states that the allegations contained in Paragraph 115 relate solely to Count V, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

116.    MCC 9-100-120(f) sets forth a clear duty for the City to honor requests from the registered owner of vehicles for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle. *See* MCC 9-100-120(f) ("The department of streets and sanitation shall honor such a request and shall not sell or otherwise dispose of a vehicle during the 15-day extension period.") (emphasis added).

**ANSWER:** The City states that the allegations contained in Paragraph 116 relate solely to Count V, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

117.    The City's policy and practice that the Department of Streets and Sanitation has discretion to honor requests for an extension, and has discretion to determine the length of the extension fails to comply with the City's mandatory duties in MCC 9-100-120(f).

**ANSWER:** The City states that the allegations contained in Paragraph 117 relate solely to Count V, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

118.    Plaintiff and the Class lack an adequate remedy at law.

**ANSWER:** The City states that the allegations contained in Paragraph 118 relate solely to Count V, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

119.    Plaintiff, on behalf of the Class, seeks a writ of mandamus that directs the City to comply with MCC 9-100-120(f), to honor all requests for a 15-day extension of the time period before the City sells or otherwise disposes of an impounded vehicle, and to not sell or otherwise dispose of impounded vehicles during the 15-day extension period.

**ANSWER:** The City states that the allegations contained in Paragraph 119 relate solely to Count V, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

## SIXTH CAUSE OF ACTION

### Declarative Judgment

**(On behalf of the Class and Notice Subclass against the City)**

120.     Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully

herein.


121.     Under the Declaratory Judgment Act, 28 U.S.C. §§2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the United States Constitution and state statutes described in this complaint.

**ANSWER:** The City states that the allegations contained in Paragraph 121 relate solely to Count

VI, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


122.     Plaintiff seeks a declaration of the rights of the parties under the Federal

Declaratory Judgement Act, 28 U.S.C. § 2201.

**ANSWER:** The City states that the allegations contained in Paragraph 122 relate solely to Count

VI, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


123.     An actual and justiciable controversy exists between the parties in light of the City's failure to provide Plaintiff and Class members with the multiple separate notices required by the Illinois Vehicle Code and/or the Municipal Code of Chicago prior to disposing of their vehicles, and failure to compensate Plaintiff and Class members for the loss of their property.

**ANSWER:** The City states that the allegations contained in Paragraph 123 relate solely to Count

VI, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.


124.     Plaintiff and Class members lack an adequate remedy at law.

**ANSWER:** The City states that the allegations contained in Paragraph 124 relate solely to Count

VI, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

125.    Plaintiff, on behalf of the Class, seeks a declaration that the City's policy or practice of disposing of impounded vehicles without sending the registered owner of impounded vehicles multiple separate notices that the City may dispose of the impounded vehicle if the registered owner or legally entitled person does not claim the vehicle violates Section 4-208 of the Illinois Vehicle Code and/or MCC 9-92-100.

**ANSWER:** The City states that the allegations contained in Paragraph 125 relate solely to Count VI, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

## SEVENTH CAUSE OF ACTION

**Violation of the Takings Clause—Failure to Send Separate Additional Notice**
**(42 U.S.C. § 1983)**
**(On behalf of the Class and Notice Subclass against the City of Chicago)**

126.    Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully herein.

127.    The Fifth Amendment of the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. Amend. V.

**ANSWER:** The City states that Paragraph 127 purports to summarize the Fifth Amendment of the United States Constitution, which speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 127 are denied.

128.    At all relevant times there was in full force and effect United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

**ANSWER:** The City states that Paragraph 128 purports to summarize 42 U.S.C. § 1983, which speaks for itself. Though no response is required, all legal conclusions contained in Paragraph 128 are denied.

129.     Actions against municipalities seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

**ANSWER:** The City states that Paragraph 129 purports to summarize the holding of *Monell v.*

*Dept. of Social Servs. of the City of New York*, which speaks for itself. Though no response is

required, all legal conclusions contained in Paragraph 129 are denied.

130.     Plaintiff and members of the Class and Subclass are "persons," as that term is defined by 42 U.S.C. § 1983.

**ANSWER:** The City states that Paragraph 130 consists of legal conclusions. Though no response

is required, all legal conclusions contained in Paragraph 130 are denied.

131.     At all relevant times, the City and its employees, agents, and/or designees acted under the color of law.

**ANSWER:** The City states that Paragraph 131 consists of legal conclusions. Though no response

is required, all legal conclusions contained in Paragraph 131 are denied.

132.     The City has a policy or practice of disposing of impounded vehicles without providing the registered owner of the vehicle multiple separate notices, as required by both the Illinois Vehicle Code and the Municipal Code of Chicago.

**ANSWER:** The City denies the allegations contained in Paragraph 132.

133.     The City disposes of impounded vehicles by either 1) selling the impounded vehicles for the scrap value of the vehicle, regardless of the actual or fair value of the vehicle; 2) auctioning the impounded vehicle at a public auction; or 3) adding the impounded vehicle to the City's fleet. Regardless of the method of disposing of the unclaimed vehicle, the City does not provide any compensation to the owner of the vehicle for disposal of the vehicle, and does not provide credit from the sale of the vehicle towards the owner's unpaid traffic citations or fees associated with impounding the vehicle. *See* MCC 9-92-100(e).

**ANSWER:** The City denies the allegations contained within the first sentence of Paragraph 133.

With respect to the second sentence contained in Paragraph 133, the City denies that it owes

vehicles owners whose vehicles have been disposed of any compensation, and therefore denies the

allegations in the first clause of this sentence. The City denies the remaining allegations contained in Paragraph 133.

134.    The City's policy and practice of taking Plaintiff's and Class members' vehicles without complying with the multiple separate notice requirements of both Section 4-208 of the Illinois Vehicle Code, and Chapter 9-92 of the MCC constitutes an unlawful taking of Plaintiff's and Class members' vehicles.

**ANSWER:** The City denies the allegations contained in Paragraph 134.

135.    The City uses the proceeds from the disposal of the impounded vehicles for public use. The City retains the proceeds from the sale—whether to URT or at a public auction—for the City's use. Further, when the City adds impounded vehicle to the City's fleet, the vehicle is taken for public use as the vehicle is used by the City and City employees.

**ANSWER:** The City states that Paragraph 135 consists of legal conclusions regarding the takings element of public use. Though no response is required, all legal conclusions contained in Paragraph 135 are denied. With respect to the second sentence of Paragraph 135, the City admits only that it retains proceeds from completed contract sales. The City denies any remaining allegations contained in Paragraph 135.

136.    Pursuant to the aforementioned policies or practices, the City unlawfully disposed of Plaintiff's and Class members' vehicles by failing to comply with the multiple separate notice requirements of Section 4-208 of the Illinois Vehicle Code, and Chapter 9-92 of the MCC.

**ANSWER:** The City denies the allegations contained in Paragraph 136.

137.    The City's conduct violates Plaintiff's and Class members' rights under the Fifth Amendment to the United States Constitution.

**ANSWER:** The City denies the allegations contained in Paragraph 137.

138.    As a direct and proximate result of the City's conduct, Plaintiff and Class members suffered damages in an amount to be determined at trial.

**ANSWER:** The City denies the allegations in contained Paragraph 138 and denies that Plaintiff is entitled to any of the requested relief.

## EIGHTH CAUSE OF ACTION

**Violation of the Takings Clause—Failure to Honor Request for Extension**
**(42 U.S.C. § 1983)**
**(On behalf of the Class and Extension Subclass against the City of Chicago)**

139.    Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully herein.

140.    The Fifth Amendment of the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. Amend. V.

**ANSWER:** The City states that the allegations contained in Paragraph 140 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

141.    At all relevant times there was in full force and effect United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

**ANSWER:** The City states that the allegations contained in Paragraph 141 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

142.    Actions against municipalities seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

**ANSWER:** The City states that the allegations contained in Paragraph 142 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

143.    Plaintiff and members of the Class and Subclass are "persons," as that term is defined by 42 U.S.C. § 1983.

**ANSWER:** The City states that the allegations contained in Paragraph 143 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

144.    At all relevant times, the City and its employees, agents, and/or designees acted under the color of law.

**ANSWER:** The City states that the allegations contained in Paragraph 144 relate solely to Count

VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

145.    MCC 9-100-120(f) sets forth a clear duty for the City to honor requests from the registered owner of vehicles for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle. *See* MCC 9-100-120(f) ("The department of streets and sanitation ***shall*** honor such a request and ***shall not*** sell or otherwise dispose of a vehicle during the 15-day extension period.") (emphasis added).

**ANSWER:** The City states that the allegations contained in Paragraph 145 relate solely to Count

VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

146.    The City has a policy or practice that the Department of Streets and Sanitation has discretion to honor requests for an extension, and has discretion to determine the length of the extension. The City's policy and practice fails to comply with the City's mandatory duties in MCC 9-100-120(f).

**ANSWER:** The City states that the allegations contained in Paragraph 146 relate solely to Count

VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

147.    The City disposes of impounded vehicles by either 1) selling the impounded vehicles for the scrap value of the vehicle, regardless of the actual or just value of the vehicle; 2) auctioning the impounded vehicle at a public auction; or 3) adding the impounded vehicle to the City's fleet. Regardless of the method of disposing of the unclaimed vehicle, the City does not provide any compensation to the owner of the vehicle for disposal of the vehicle, and does not provide credit from the sale of the vehicle towards the owner's unpaid traffic citations or fees associated with impounding the vehicle. *See* MCC 9-92-100(e).

**ANSWER:** The City states that the allegations contained in Paragraph 147 relate solely to Count

VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

148.    The City's policy and practice of disposing of Plaintiff's and Class members' vehicles without honoring a request for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle constitutes an unlawful taking of Plaintiff's and Class members' vehicles.

**ANSWER:** The City states that the allegations contained in Paragraph 148 relate solely to Count

VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

149.    The City uses the proceeds from the disposal of the impounded vehicles for public use. The City retains the proceeds from the sale—whether to URT or at a public auction—for the City's use. Further, when the City adds impounded vehicle to the City's fleet, the vehicle is taken for public use as the vehicle is used by the City and City employees.

**ANSWER:** The City states that the allegations contained in Paragraph 149 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

150.    Pursuant to the aforementioned policies or practices, the City unlawfully disposed of Plaintiff's and Class members' vehicles by failing to honor requests for a 15-day extension prior to the City disposing of the impounded vehicle.

**ANSWER:** The City states that the allegations contained in Paragraph 150 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

151.    The City's conduct violates Plaintiff's and Class members' rights under the Fifth Amendment to the United States Constitution.

**ANSWER:** The City states that the allegations contained in Paragraph 151 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

152.    As a direct and proximate result of the City's conduct, Plaintiff and Class members suffered damages in an amount to be determined at trial.

**ANSWER:** The City states that the allegations contained in Paragraph 152 relate solely to Count VIII, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

## NINTH CAUSE OF ACTION

### Declaratory Judgment
### (On behalf of the Class and Extension Subclass against the City)

153.    Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully herein.

154. Under the Declaratory Judgment Act, 28 U.S.C. §§2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the United States Constitution and state statutes described in this complaint.

**ANSWER:** The City states that the allegations contained in Paragraph 154 relate solely to Count

IX, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

155. Plaintiff seeks a declaration of the rights of the parties under the Federal

Declaratory Judgement Act, 28 U.S.C. § 2201.

**ANSWER:** The City states that the allegations contained in Paragraph 155 relate solely to Count

IX, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

156. An actual and justiciable controversy exists between the parties in light of the City's failure to honor requests for a 15-day extension prior to disposing of their vehicles, which deprived Plaintiff and Class members of their property.

**ANSWER:** The City states that the allegations contained in Paragraph 156 relate solely to Count

IX, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

157. Plaintiff and Class members lack an adequate remedy at law.

**ANSWER:** The City states that the allegations contained in Paragraph 157 relate solely to Count

IX, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

158. Plaintiff, on behalf of the Class, seeks a declaration that the City's policy or practice of failing to honor requests for a 15-day extension prior to disposing of impounded vehicles violates MCC 9-100-120(f).

**ANSWER:** The City states that the allegations contained in Paragraph 158 relate solely to Count

IX, which was dismissed by the Court on March 31, 2024; therefore, no answer is required.

## <u>TENTH CAUSE OF ACTION</u>

### **Unjust Enrichment**

42

**(On behalf of the Class and Subclasses against Defendants)**

159. Plaintiff restates and re-alleges all preceding paragraphs as though fully set forth herein.

**ANSWER:** The City incorporates its answers to all preceding paragraphs as if set forth fully herein.

160. Through the process of impounding and disposing of impounded vehicles, Defendants retained benefits at Plaintiff's and Class members' expense.

**ANSWER:** The City denies the allegations contained in Paragraph 160.

161. The City received a benefit by disposing of Plaintiff's and Class members' property through: 1) the proceeds from the sale of impounded vehicles to URT for scrap; 2) the proceeds from the public auction of Plaintiff's and Class members' impounded vehicles and the property therein; and 3) adding impounded vehicles to the City's fleet of vehicles.

**ANSWER:** The City denies the allegations contained in Paragraph 161.

162. The City retained the benefits of disposing of Plaintiff's and Class members' vehicles by keeping the proceeds from the sale or adding the vehicles to the City's fleet and failing to compensate Plaintiff and Class members, including demanding that Plaintiff and Class members pay the entire amount of outstanding traffic tickets, and fees and costs associated with impounding the vehicles.

**ANSWER:** The City denies the allegations contained in Paragraph 162.

163. URT received a benefit from purchasing Plaintiff's and Class members' vehicles for the scrap value of the vehicles—far below the actual or market value—and either retaining the property for its own use or reselling the property.

**ANSWER:** The City denies the allegations contained in Paragraph 163.

164. Plaintiff and Class members were harmed by Defendants' conduct because they were deprived of their property without any compensation, including that the City continued to demand that Plaintiff and Class members pay the full amount of outstanding traffic citations and costs and fees associated with impounding their vehicles after Defendants disposed of the impounded vehicles.

**ANSWER:** The City denies the allegations contained in Paragraph 164.

165.     Plaintiff and Class members were further harmed by Defendants' conduct because their vehicles were unlawfully disposed of, in that the City failed to comply with the requirement to send multiple separate notices to the registered owners of the impounded vehicles prior to disposing of the vehicle.

**ANSWER:** The City denies the allegations contained in Paragraph 165.

166.     Plaintiff and Class members were also harmed by Defendants' conduct because their vehicles were unlawfully disposed of, in that the City failed to fully honor requests for a 15 day extension prior to disposing of the vehicle.

**ANSWER:** The City denies the allegations contained in Paragraph 166.

167.     Defendants' retention of the benefits that they obtained from the disposal of Plaintiff's and Class members' property violates the fundamental principles of justice, equity, and good conscience, and requires that Plaintiff and Class members be compensated.

**ANSWER:** The City denies the allegations contained in Paragraph 167 and denies that Plaintiff is entitled to any of the requested relief.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more of the Classes defined above;

B.     Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.     Award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class members are entitled;

D.     Award pre-judgment and post-judgment interest on such monetary relief;

E.     Enter a writ of mandamus directing the City to honor all requests made under MCC 9-100-120(f) for a 15-day extension of the period before the City sells or otherwise disposes of an impounded vehicle.

F.     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires the City to comply with the notice requirements of Section 4-208 of the Illinois Vehicle Code prior to disposing of impounded;

G.      Award reasonable attorneys' fees and costs; and

H.      Grant such further relief that this Court deems appropriate.

**ANSWER:** The City denies that Plaintiff is entitled to any of the requested relief.

## DEFENDANT CITY OF CHICAGO'S
## <u>AFFIRMATIVE DEFENSES</u>

For its affirmative defenses to the Amended Complaint, and without assuming the burden of proof on any issue for which Plaintiff bears the burden of proof, the City states:

## <u>AFFIRMATIVE DEFENSES</u>

1. Each and every allegation of the Amended Complaint not expressly admitted is hereby denied.

2. The City hereby incorporates all denials and affirmatively pleaded matters in its answers to Paragraphs 1 through 167 and all unnumbered paragraphs in its Answer to the Amended Complaint as set forth in its affirmative defenses herein.

3. Vehicle owners who do not respond to ticketed Traffic Code violations and owners who violate red light and speed provisions of the Traffic Code receive a Notice of Violation ("NOV") from the City's Department of Finance.

4. An NOV informs a vehicle owner that a violation occurred and that the vehicle owner can pay the associated fine or contest the violation through a hearing or by mail.

5. An NOV also informs a vehicle owner that payment options are available and directs the vehicle owner to the Department of Finance to learn about those options, which include payment plans.

6. If, after requesting a hearing, a vehicle owner fails to appear for the scheduled hearing or fails to pay the fine amount owed or enter into a payment plan, the Department of Administrative Hearings ("DOAH") will enter a Default Determination against the vehicle owner.

7.      If a vehicle owner does not request a hearing and otherwise fails to pay the fine amount owed or enter into a payment plan, the City's Department of Finance will send the vehicle owner a Notice of Determination ("NOD").

8.      A NOD, in part, informs a vehicle owner that payment options are available and directs the vehicle owner to the Department of Finance to learn about those options, which include payment plans.

9.      If a vehicle owner requests and participates in a hearing or contests by mail and is found liable, DOAH will enter a Determination of Liability against the vehicle owner.

10.     If a vehicle owner receives a Default Determination, a NOD, or a Determination of Liability but does not during the requisite time periods contest the determination or pay the relevant fines associated with the determination or enter into a payment plan, the Department of Finance sends the vehicle owner a Notice of Final Determination ("NFD").

11.     An NFD, in part, informs a vehicle owner that a final determination of liability has been entered against the vehicle owner.

12.     An NFD also contains information about the later stages of a ticket disposition, including the possibility of booting and impoundment.

13.     An NFD informs a vehicle owner that payment options are available and directs the vehicle owner to the Department of Finance to learn about those options, which include payment plans.

14.     NFDs also include information about the potential for disposal through sale or destruction.

15.     If a vehicle owner accrues three violations in final determination status or two violations that have been in final determination status for at least a year and does not pay the

associated fines or enter into a payment plan, the vehicle owner receives a Vehicle Seizure Notice ("VSN").

16.     A VSN informs a vehicle owner that the vehicle owner is subject to immobilization (seizure) and impending tow, and that the owner has 21 days from the date of the first-received VSN to challenge the immobilization and impending impoundment by appearing at a City facility offering hearing hours.

17.     A VSN informs a vehicle owner that a failure to retrieve the owner's vehicle after impoundment can result in disposal of the vehicle through sale or destruction.

18.     A VSN informs a vehicle owner that payment options are available to avoid seizure and directs the vehicle owner to the Department of Finance to learn about those options, which include payment plans.

19.     If a vehicle owner fails to contest or pay the amounts owed or enter into a payment plan within 21 days of the VSN date, the vehicle owner's vehicle may be booted as described in the VSN.

20.     When a vehicle is booted, a sticker is attached to the vehicle that describes the basis for the boot, the boot removal process, and how a booting and impending impoundment can be contested.

21.     If a vehicle owner fails to contest the booting of the owner's vehicle within the requisite time period or pay the amounts owed or enter into a payment plan, the vehicle is eligible for an immediate tow to an impound lot.

22.     After a vehicle has been towed to an impound lot, and during the period that the vehicle is in the pound, the City's Department of Streets and Sanitation ("DSS") sends multiple Notice of Vehicle Impoundment ("NVI") documents to the vehicle's owner.

23.     An NVI provides a vehicle owner details about the impoundment and informs the owner that the owner is entitled to an administrative hearing, upon request, to determine whether the immobilization or any subsequent towing and impoundment was erroneous.

24.     If a vehicle owner fails either to challenge impoundment within the requisite time period laid out in the NVI or pay the associated fines, penalties and fees or enter into a payment plan, the impounded vehicle will become eligible for disposal.

25.     Plaintiff is an individual whose purported vehicle was booted, towed, and disposed of.

26.     Plaintiff Miyah Lacy received at least thirteen tickets for vehicle violations in Chicago: (1) Ticket # 6042659286 ("Ticket '9286") issued on March 15, 2015 for speeding; (2) Ticket # 09189565822 ("Ticket '5822") issued on October 27, 2015 for not having a city sticker; (3) Ticket # 09189675810 ("Ticket '5810") issued on November 23, 2015 for expired plates or registration; (4) Ticket # 09189675811 ("Ticket '5811") issued on November 23, 2015 for not having a city sticker; (5) Ticket # 07006787965 ("Ticket '7965") issued on July 1, 2016 for a red light violation; (6) Ticket # 00067285613 ("Ticket '5613") issued on September 17, 2016 for expired plates or registration; (7) Ticket # 00067469549 ("Ticket '9549") issued on November 8, 2016 for expired plates or registration; (8) Ticket # 00068082754 ("Ticket '2754") issued on June 2, 2017 for parking within 15 feet of a fire hydrant; (9) Ticket # 00068269764 ("Ticket '9764") issued on June 2, 2017 for expired plates or registration; (10) Ticket # 00068195761 ("Ticket '5761") issued on June 25, 2017 for expired plates or registration; (11) Ticket # 00068796044 ("Ticket '6044") issued on February 25, 2018 for parking in a disabled parking zone; (12) Ticket # 00069463255 ("Ticket '3255") issued on June 7, 2018 for a missing or

noncompliant plate; and (13) Ticket # 07008147281 ("Ticket '7281") issued on November 1, 2018 for a red light violation.

27.     The Department of Finance sent Lacy NOVs, NODs, NFDs, Collection Notices, and VSNs regarding her tickets.

28.     As of December 6, 2019, two tickets that had been assessed to Lacy's ultimately impounded vehicle, a 2003 Honda Odyssey, were in seizure status because they had remained unpaid and in final determination status for more than a year. Lacy failed to pay, enter into a payment plan, contest, or request hearings on either of the two tickets despite having been sent NOVs, NODs, NFDs, Collection Notices, and VSNs regarding the tickets.

29.     A boot sticker was placed on the 2003 Honda Odyssey on December 6, 2019, and the vehicle was towed to the pound on December 8, 2019.

30.     DSS thereafter sent Lacy NVIs.

31.     Lacy never requested a hearing to challenge the booting, tow, or impoundment of her vehicle.

32.     After her vehicle's impoundment, Lacy failed to retrieve her vehicle from the pound and the vehicle was sold on January 22, 2020.

33.     Of the thirteen violations listed in Paragraph 26, nine remain unpaid.

34.     Lacy currently owes $2,187.55 to the City for the nine violations past the final determination stage of the adjudication process.

## FIRST AFFIRMATIVE DEFENSE

### (Substantial Compliance)

35.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 34 *supra* of the City's Affirmative Defenses.

36.     The City is not liable and/or Plaintiff and/or putative class members are not prejudiced or injured by the City's notice procedures, because, if the City is found to not have strictly complied with MCC § 9-92-100 and/or 625 ILCS 5/4-208, the City at a minimum substantially complied with MCC § 9-92-100 and 625 ILCS 5/4-208.

## SECOND AFFIRMATIVE DEFENSE

### (Mandatory/Directory)

37.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 36 *supra* of the City's Affirmative Defenses.

38.     The City is not liable and/or Plaintiff and/or putative class members are not prejudiced or injured by the City's notice procedures, because the language of MCC § 9-92-100 and 625 ILCS 5/4-208 is directory not mandatory.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Prejudice/Injury—Actual Notice)

39.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 38 *supra* of the City's Affirmative Defenses.

40.     Plaintiff and/or putative class members who received at least one VSN or NVI, or who received other notice from the City about the potential for disposal, such as but not limited to an NFD, were not prejudiced or injured by the City's alleged lack of compliance with MCC § 9-92-100 and 625 ILCS 5/4-208 because they received notice of the potential for disposal.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

41.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 40 *supra* of the City's Affirmative Defenses.

42.     To the extent that Plaintiff and/or the putative class members failed to contest their tickets, booting or impoundments of their vehicles, failed to pay the amounts owed to the City, failed to enter into a payment plan and make any required payments before their vehicles were towed or disposed of, and/or failed to request a 15-day extension, they have waived their right to recover herein, in whole or in part, and/or they are barred by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

### (No Proximate Cause)

43.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 42 *supra* of the City's Affirmative Defenses.

44.     The disposal of Plaintiff's and/or putative class members' vehicles did not result from the City's alleged lack of compliance with MCC § 9-92-100 or 625 ILCS 5/4-208 but rather to the extent Plaintiff and/or putative class members failed to take appropriate actions to retrieve their vehicles, such as contesting their tickets, booting, or impoundments of their vehicles, paying the amounts owed to the City, entering into a payment plan and making any required payments before their vehicles were towed or disposed of, and/or requesting a 15-day extension.

## SIXTH AFFIRMATIVE DEFENSE

### (Statute of Limitations/Laches)

45.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 44 *supra* of the City's Affirmative Defenses.

46.     Plaintiff's claims and/or those of the putative class members are barred, in whole or in part, by all applicable statutes of limitations and the equitable doctrine of laches to the extent they sat on their rights and failed to pursue their claims, such as by: contesting their tickets, booting, or impoundments of their vehicles, paying the amounts owed to the City,

entering into a payment plan and making any required payments before their vehicles were towed or disposed of, and/or requesting a 15-day extension.

## SEVENTH AFFIRMATIVE DEFENSE

### (Immunity)

47. The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 46 *supra* of the City's Affirmative Defenses.

48. Despite Plaintiff's characterizations, the Amended Complaint requests civil damages for alleged injuries as the term "injury" is defined in the Tort Immunity Act, *see* 745 ILCS 10/1-204.

49. Accordingly, the City has immunity from Plaintiff's and/or putative class members' civil damages claims pursuant to the Tort Immunity Act. *See* 745 ILCS 10/2-103, -109, -201, -202, -203, -208, -212.

50. Putative class member claims are also time-barred by the Tort Immunity Act's one-year statute of limitations. *See* 735 ILCS 10/8-101.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

51. The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 50 *supra* of the City's Affirmative Defenses.

52. Plaintiff and/or the putative class members failed to mitigate their alleged damages to the extent they failed to take actions such as, contesting their tickets, booting, or impoundments of their vehicles, paying the amounts owed to the City, entering into a payment plan and making any required payments before their vehicles were towed or disposed of, and/or requesting a 15-day extension.

## NINTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

53.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 52 *supra* of the City's Affirmative Defenses.

54.     The doctrine of unclean hands prevents a party from obtaining equitable relief if the party engaged in improper or harmful conduct in connection with the same pattern of events that gives rise to its claim for equitable relief.

55.     Plaintiff and/or the putative class members are barred from any equitable recovery to the extent that they failed to abide by the City's parking, standing, compliance, automated speed enforcement system, and automated traffic law enforcement system laws, and/or to the extent they failed to contest their violations, failed to pay the fines incurred for violating those laws, failed to enter into a payment plan and make any required payments before their vehicles were towed or disposed of, and/or failed to request a 15-day extension.

## TENTH AFFIRMATIVE DEFENSE

### (Right to Set-Off)

56.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 55 *supra* of the City's Affirmative Defenses.

57.     The City is entitled to a set-off to the extent that Plaintiff and/or any putative class members owe money to the City.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Abandonment)

58.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 57 *supra* of the City's Affirmative Defenses.

59.     The City is not liable for Plaintiff's and/or the putative class members' takings claims because Plaintiff and/or the putative class members abandoned their vehicles to the extent they failed to take the appropriate actions to retrieve them, such as contesting their tickets, booting, or impoundments of their vehicles, paying the amounts owed to the City, entering into a payment plan and making any required payments before their vehicles were towed or disposed of, and/or requesting a 15-day extension.

### TWELFTH AFFIRMATIVE DEFENSE

(Reservation of Rights – Discovery)

60.   The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 59 *supra* of the City's Affirmative Defenses.

61.   The City reserves the right to identify additional defenses as they may become apparent through discovery or otherwise.

### THIRTEENTH AFFIRMATIVE DEFENSE

(Reservation of Rights – Individualized Issues)

62.     The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 61 *supra* of the City's Affirmative Defenses.

63.     In the event of certification of a class, the City reserves the right to advance additional defenses particular to class members.

### COUNTERCLAIM

Defendant City of Chicago ("Defendant" or "Counterclaim Plaintiff" or "City"), asserts the following counterclaim against Plaintiff/Counterclaim Defendant Miyah Lacy based on Plaintiff's non-payment of finally adjudicated Traffic Code violations.

1. The City adopts and incorporates by reference as if fully set forth herein all allegations set forth in Paragraphs 1 through 63 *supra* of the City's Affirmative Defenses.

### Parties

2. Counterclaim Plaintiff, City of Chicago, is a Home Rule Authority, Municipal Corporation organized and existing under the laws of the State of Illinois.

3. Counterclaim Defendant, Miyah Lacy, is an individual who resides in Dolton, Illinois.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1367 because it arises out of the same case or controversy as the claims alleged in Plaintiff's Amended Complaint over which the Court has original jurisdiction.

5. The Court has jurisdiction over Counterclaim Defendant because she resides in the Northern District of Illinois.

6. Venue is proper under 28 U.S.C. § 1391 because Counterclaim Defendant resides in this judicial district and is a resident of Illinois.

### Count I – Set-Off for Monies Owed to City
### From Finally Adjudicated Traffic Code Violations

7. The named Plaintiff/Counterclaim Defendant, Miyah Lacy, has violated the Traffic Code frequently, ignored citations, and failed to timely pay the fines, late payment penalties, interest due on her tickets, and towing and storage fees associated with an impounded vehicle and failed to enter into and/or make payments on any payment plans regarding these amounts, and as such she is liable to the City for any finally adjudicated amounts, as authorized by the MCC or otherwise by law.

WHEREFORE, Defendant/Counterclaim Plaintiff, the City of Chicago, respectfully requests:

a. A set-off, equal to the amounts owed by the Plaintiff/Counterclaim Defendant based on finally adjudicated violations under the Traffic Code, from any judgment or other court-ordered award of payment of money to the Plaintiff/Counterclaim Defendant, including without limitation, damages, restitution, costs, and/or attorneys' fees; and

b. Such other and further relief as the Court deems proper.


Dated: May 21, 2024                                              Respectfully submitted,


ANDREW WORSECK
andrew.worseck@cityofchicago.org
JENNIFER ZLOTOW                                  /s/ Jennifer Zlotow
jennifer.zlotow@cityofchicago.org              Senior Counsel
JOHN CASEY
john.casey@cityofchicago.org
City of Chicago Department of Law
Constitutional and Commercial
  Litigation Division
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-4985

*Attorneys for the City of Chicago*